Washington and Balt. Turnpike Road *vs.* Balt. and Ohio R. R. Co.—1839.

The President, Managers and Company of the Wash-
ington and Baltimore Turnpike Road, *vs.* The Balti-
more and Ohio Rail Road Company.—*December*, 1839.

The Legislature of Maryland in 1812 chartered a company for the construc-
tion of a turnpike road from the line of the *District of Columbia* to the
city of *Baltimore*, for the transportation of travellers and goods from place
to place, and along the line thereof, and with power to charge tolls. After
the plaintiffs under this act of incorporation had constructed their road,
and were in the full exercise and enjoyment of all their franchises, the
Legislature, in 1827, incorporated the defendants, with authority to make
a rail road, having the same *termini*, and occupying the same line of travel.
The defendants, under the power conferred upon them by this charter, made
and completed their rail road, and opened it for public use in the year 1835,
charging as authorised by law, tolls for transporting persons and commo-
dities upon their road, to their profit and advantage, and to the prejudice
of the defendants, by diverting much of the trade and travel from their
turnpike.
For this injury the plaintiffs in 1839 instituted against the Rail Road Com-
pany a special action of trespass on the case. The county court decided
the case against the plaintiffs *pro forma;* which upon appeal was affirmed
by the Court of Appeals.

Appeal from *Baltimore* County Court.

This was a special action of trespass on the case, docketted
by consent, between the appellants as plaintiffs, and the ap-
pellees as defendants.

*The President, Managers and Company of the Washington
and Baltimore Turnpike Road, by G. L. Dulany and William
L. Marshall,* their attorneys, complain, for that whereas the
said plaintiffs were, by an act of General Assembly of Mary-
land, incorporated in the year of our Lord 1812, for making a
turnpike road from the *District of Columbia* to the city of *Bal-
timore,* and did, in pursuance of the said act of incorporation,
thereafter make said road.    And whereas they were authorised
by said act of incorporation, after having made as aforesaid
the said road, and the same had been examined, approved and
licensed according to the provisions of said act, to collect and
receive from every person or persons using the said road by
riding, driving or leading any horses, cattle, hogs, sheep, sul-

key, chair, chaise, phæton, coach, coachee, cart, wagon, wain, sleigh, sled, or other carriage of pleasure or burthen, to wit, for every score of sheep, hogs or cattle, one-fourth of a dollar; for every horse and rider, and for every coach, stage, wagon, and every other carriage, under whatsoever name, drawn by one, two or more horses, one-fourth of a dollar for every ten miles, and so in proportion for every lesser distance. And whereas they did construct said road as aforesaid, and the same was examined, approved and licensed, as by the said act of incorporation is provided, to wit, on the first day of January, in the year eighteen hundred and fifteen, they were, on the day last aforesaid, and ever since have been, and now are, seized in their demesne, as of fee and right of the said road, for the uses herein before mentioned, with a right to receive tolls as aforesaid, for the said use of the same. Nevertheless the defendants aforesaid, well knowing the premises, and contriving to injure and disturb the said plaintiffs in the enjoyment of their said road and franchise, and to deprive them of the toll and profits accruing therefrom, heretofore, on the     day of     in the year of our Lord eighteen hundred and thirty    , at the county aforesaid, did construct a public highway, called a rail road, from the aforesaid city of *Baltimore* to the aforesaid *District of Columbia*, near to the aforesaid turnpike road of the said plaintiffs, and have established thereon cars, or carriages for the transportation of persons and merchandize, and carriages and beasts of various descriptions from the said city of *Baltimore* to the said *District of Columbia*, and to and from various places between the same, for a toll to be paid to them, the said defendants, for such transportation, and the said rail road and cars or carriages, have kept up from that time to the present, and during that time have transported and conveyed from the said city to the said *District*, and to and from various places between the same, being near to the aforesaid turnpike road, divers persons and carriages and beasts, and a great amount of merchandize, which, but for the establishment and use of said rail road, would have used, and before the establishment of said rail road were wont to use, and be conveyed

394    CASES IN THE COURT OF APPEALS

Washington and Balt. Turnpike Road *vs.* Balt. and Ohio R. R. Co.—1839.

and driven along the said turnpike of the said plaintiffs, and have received divers sums of money as toll therefor, to the great prejudice of the said plaintiffs, at the county aforesaid, and so that the said plaintiffs have, during the said time lost all tolls and profits arising from their said turnpike road. And the said plaintiffs further say, that they being entitled as aforesaid, to the said turnpike road, and the said defendants well knowing the same, and designing to injure them the said plaintiffs, in the enjoyment of the same, and deprive them of the toll and profits accruing therefrom, heretofore, and whilst the plaintiffs were thus entitled, to wit, on the          day of          in the year eighteen hundred and thirty          , did open a public highway from the said city to the said *District*, near to the said turnpike road, and on the day and year aforesaid, and at the county aforesaid, permitted, and continually since, until the present time, have permitted the same to be used for hire or toll, and have received for the use of the same large sums of money, whereby the said plaintiffs have lost and been deprived of divers other profits which would have arisen to them from the use of their said road, and have been greatly injured in their possession thereof, and right thereto. And the said plaintiffs further complain, that on the day of          , in the year eighteen hundred and          , and for a long time before, they were and ever since have been, and now are, seized in their demesne as of fee, and right, of a certain other turnpike road extending from the city of *Baltimore* to the line of the *District of Columbia*, with the right to receive a certain toll from all persons using the same, to wit, the toll herein before mentioned: Yet the defendants well knowing the same, have opened, on the day and year aforesaid, at the county aforesaid, another road near to the said turnpike road of the said plaintiffs, at the commencement of the same at the said line of the *District of Columbia*, and at its termination at the city of *Baltimore*, and along its entire extent between the said places, and have conveyed divers persons and beasts, and merchandize along the same, in cars or carriages, for toll or hire, from the said city of *Baltimore* to the said line

of the *District of Columbia*, and have received divers sums of money therefor, as toll or hire, with intent to injure and defraud the said plaintiffs, in the enjoyment of their said road and franchise, and to deprive them of the toll and profits accruing therefrom, and the same have kept open and used as aforesaid, from the day and year aforesaid until the present time, to the great prejudice of said plaintiffs, who have thereby during all the aforesaid time, lost all toll and profit arising from their said turnpike road.    And the said plaintiffs further complain, that they, on the            day of         , in the year eighteen hundred and            , and for a long time before were, and ever since have been, and now are, seized as last aforesaid of a certain other turnpike road which they were incorporated by the *General Assembly of Maryland* to make, from the city of *Baltimore* to the said line of the *District of Columbia*, for the use of persons travelling or conveying merchandize or beasts, or carriages of whatsoever description, from the said city of *Baltimore* to the city of *Washington*, in the said *District of Columbia*, with a right to receive a toll, to wit, the toll heretofore set forth, for the use of the same, which they made agreeable to the said act of incorporation; yet the defendants well knowing the same, and intending to injure the said plaintiffs in their enjoyment of the road and franchise, and to deprive them of the tolls and profits accruing from the same, did, on the day and year last aforesaid, open a certain other road, near to the said turnpike road of the plaintiffs, at the commencement and termination of the same, at the said city of *Baltimore*, and said line of the *District of Columbia*, and along its whole extent, with intent that the same should be used by persons travelling or conveying merchandize, beasts or carriages of whatever description as aforesaid, from the said city of *Baltimore* to the said city of *Washington*, and have kept open the same and permitted it to be used from the aforesaid time to the present, by the persons aforesaid, and for the purposes aforesaid, and have conveyed in cars or carriages the persons or things aforesaid, along the said road, for toll or hire, and have received therefor large sums of money, to the great prejudice

of the plaintiffs, to wit, on the day and year aforesaid, at the county aforesaid, whereby the said plaintiffs have, during all the said time, lost all toll or profit arising from their said turnpike road. Wherefore the said plaintiffs say that they are injured, and have sustained damage, &c.

The defendants pleaded not guilty, on which issue was joined.

The parties filed the following statement of facts and agreements, to wit:

"On the seventeenth day of December, in the year 1812, the Legislature of Maryland incorporated the President, Managers and Company of the Washington and Baltimore Turnpike road, the present plaintiffs, for the purpose of making a turnpike road from the line of the District of Columbia to the city of Baltimore, as by reference to the act of December session 1812, chap. 78, will fully appear, which act and the supplements thereto, as printed in the published editions of the Laws of Maryland, it is agreed may be read as a part of this statement, and that it was the design of said turnpike road, by being united to another turnpike road leading from the line of the District of Columbia to the city of Washington, to complete a turnpike road communication between Baltimore and Washington, for the accommodation of the public in travelling and in the transportation of goods, and in the general uses of such roads, as well between the said cities of Baltimore and Washington, as along the line of said road. That under the said act of incorporation, the plaintiffs constructed a turnpike road as thereby authorised, and completed the same for the use therein required, and connected with the road leading from the line of the District of Columbia to the city of Washington, as intended as aforesaid; and it was and had been for a long time used in such connection for the purposes aforesaid; and the plaintiffs having complied with all the conditions precedent to their charter, were, and had long been, in the legal possession and exercise of all the franchises granted by the said act of incorporation, when, on the twenty-eighth day of February, in the year 1827, the Legislature of Maryland incorporated the Baltimore and Ohio rail road company, the de-

fendants in this suit, for the purpose of constructing a rail road from the city of Baltimore to some suitable point on the Ohio river, with authority to make, or cause to be made, lateral rail roads in any direction whatever, in connection with said rail road from the city of Baltimore to the Ohio river.

"That on the 22nd day of February 1831, the legislature of *Maryland* passed an act, entitled, "an act to promote internal improvement by the construction of a rail road from Baltimore to the city of Washington, to which a supplement was passed on the 27th of February 1832, and a further supplement was passed on the 9th of March 1833;—that under the three last named acts, authority was given to the *Baltimore and Ohio* rail road company to construct a rail road from such point or place on that part of the Baltimore and Ohio rail road, then constructed under the original charter of the 28th of February 1827, and in use, not exceeding eight miles from the city of Baltimore, as the company might deem most convenient to the line of the State of Maryland adjoining the District of Columbia in a direction towards the city of Washington; that at the second session of the 21st congress, an act was passed, entitled, &c. &c., authorising the said Baltimore and Ohio rail road company to extend into and within the District of Columbia, a lateral rail road, such as the company shall construct or cause to be constructed, in a direction towards the said District, in connexion with the rail road from the city of Baltimore to the Ohio river,—all which acts relating to the Baltimore and Ohio rail road company, it is hereby agreed may be read from the printed copies of the laws containing them. That, acting under the authority thus granted to said defendants, they proceeded to construct the rail road to the city of Washington, authorised by the acts of assembly aforesaid, which was completed by them, and the use of which commenced in the year 1835, and has continued to the day of the issuing of the writ in this action, during all which time, from the completion of their said turnpike road as aforesaid, the plaintiffs were, and have continually been, in the possession and exercise as aforesaid of all their franchises granted them in their aforesaid act

of incorporation and the supplement thereto. That the termini of the said rail road and turnpike road, and the respective locations of the same throughout their entire routes, are, as appear by a plat of the same, annexed to the seventh annual report of the Baltimore and Ohio rail road company, which plat is to be exhibited as part of this statement, and both were designed to form a communication between Washington city and Baltimore, and between Baltimore and the District of Columbia, to accommodate persons travelling between said places and along their respective routes, and for purposes of transportation. That the said rail road was also intended and is used as a rail road communication for passengers travelling from the west on the main stem of the Baltimore and Ohio rail road to the city of Washington, and for those travelling from Washington to the west, and for purposes of transportation generally on the same route, and that the said turnpike road was also designed as a communication for passengers coming from the west by way of the city of Baltimore, or arriving at any point upon the said turnpike road between the cities of Baltimore and Washington, and also for those going from Washington by way of Baltimore to the west, and was used as such before the construction of said rail road. That the defendants have always, as authorised by their charter, charged a toll or price of transportation for the use of their said rail road between the said cities of Baltimore and Washington, and that since the said rail road has been in operation, and in consequence of its being offered to the public accommodation as aforesaid, and by reason of its use, much of the travel between the two cities aforesaid, and of the way travel, and of the transportation of merchandize and other articles which had been a source of profit to the plaintiffs, has been diverted from the turnpike road aforesaid to the said rail road, to the injury of the plaintiffs and to the advantage of the defendants. That by the authority of an act of the General Assembly of Maryland, passed at December session 1833, ch. 170, the location of the said turnpike road was changed at the crossing marked ⋈ on the plat, near the Sandy Spring road, and the assent of the turnpike

road company was given thereto, according to the terms of the following agreement, dated May 13th, 1834, which is to be taken as a part of this statement: 'An agreement made and concluded this 13th day of May, in the year of our Lord 1834, between the President and Managers of the Washington and Baltimore Turnpike Road Company of the first part, and the Baltimore and Ohio Rail Road Company of the second part: Whereas, by an act of the General Assembly of Maryland, passed at December session, in the year 1833, entitled, a further additional supplement to an act entitled, an act to promote internal improvement by the construction of a rail road from Baltimore to the city of Washington and for other purposes, it is enacted that the President and Directors of the Baltimore and Ohio Rail Road Company be and they are hereby authorised, with the assent of the Washington and Baltimore turnpike road company being first had and obtained, to change the present location of the Washington and Baltimore turnpike road at the places where the rail road between Baltimore and the city of Washington crosses the same, to such other and new location as the president and directors may deem best calculated to facilitate the passage of the rail road over the said turnpike road, also to obtain possession of the land included in such new locations, and to construct a stone or gravel turnpike thereon, and in the same manner that the President and Managers of the Washington and Baltimore turnpike road company might have done, had such new location been apart from the original location of said turnpike road; and the said parts of the said turnpike road, when so constructed on the new locations to be made as aforesaid, and when the construction thereof is approved by the President and Managers of the said Washington and Baltimore turnpike road company, shall be taken and used as a part of the said Washington and Baltimore turnpike road; the said approval to be given under the seal of said corporation and to be recorded in the land records of the county within which the changes of location shall be made: and whereas, by a memorandum of an agreement heretofore made on behalf of the said two corporations, in antici-

pation of the powers necessary to perfect the same being granted by the said General Assembly, as by the act aforesaid it was stipulated, that for and in consideration of the sum of ten thousand dollars, to be paid to the said president and managers of the said turnpike road company, the said rail road company should have the privilege of so changing the location or grade of the said turnpike road as to cause it to pass the said rail road at the same level with the said rail road at the places of crossing, it being distinctly understood that the said president and managers of the said turnpike road company reserved all claims which they might or could have now or hereafter against the State of Maryland, the said rail road company, or any other persons or corporations, by reason of the injury to the travel, or by reason of the diversion thereof from the said turnpike road, caused by the construction and use of the said rail road, parallel thereto,—And whereas the said two corporations, being now clothed with ample powers for the purpose, and desirous of carrying the said memorandum of an agreement into effect according to its tenor:

"Now therefore, this agreement witnesseth, that the said President and Managers of the Washington and Baltimore turnpike road company, pursuant to the authority contained in the said act of assembly, and for and in consideration of the premises and of the sum of ten thousand dollars current money to them paid by the said Baltimore and Ohio rail road company, the receipt whereof is hereby acknowledged, hath given and granted, and by these presents do give and grant, to the said Baltimore and Ohio rail road company the right or privilege of so changing the location or grade of the said turnpike road, where the rail road passes or crosses over it in the lateral branch from the main stem to the city of Washington, as to cause it to pass the said rail road on the same level with the said rail road at the places of crossing. The said places of crossing are four in number:—1, in the village of Elk Ridge Landing,—2, near the 20th mile stone on the said turnpike road,—3, near the village of Vansville,—and 4, near the village of Bladensburg. The three plats accompanying this

agreement as part thereof, represent the alterations in the grade and locations agreed upon between the parties hereto, for the three first of the said places of crossing. In plat No. 1, the change takes place in the vertical grade, which, instead of remaining as the line marked with the letters A, C, L, E, B, is to be changed in the line A, G, C, D, E, B. In plat No. 2, the change takes place in the horizontal location, which, instead of remaining as the line from J to N, is to be changed into the line L, M, N, with the grade exhibited in the section P, Q. In plat No. 3, the changes take place in the vertical grade, which, instead of remaining as the line marked with the letters E, A, L, D, F, is to be changed to the line E, A, B, C, D, F, the crossing at the village of Bladensburg will be at the present level of the turnpike road. The expense of such changes in the grade or location of the said turnpike road, to be borne by the said rail road company, the said rail road company to commence forthwith or at its pleasure, or to continue if already commenced, the construction of the said rail road and altering the location and grade of the said turnpike road at the places aforesaid, without hindrance or interruption on the part of the said turnpike road company,—and it is declared to be the meaning and intention of the parties to these presents, and it is hereby so expressly declared, that nothing herein contained, or that is contained in the memorandum herein referred to, shall operate as a bar to any claim which the turnpike road company aforesaid may or can have now or hereafter, against the State of Maryland, the said rail road company, or any other persons or corporations, by reason of the injury to the travel on, or by reason of the diversion thereof from, the said turnpike road, caused by the construction and use of the said rail road parallel thereto. It is further agreed and understood, that the said rail road company in carrying on the work of construction and alteration aforesaid at the crossing places aforesaid, shall not cause injury or interruption to travel on said turnpike road."

Upon the aforegoing statement of facts it is contended that the said plaintiffs have a right to recover, because of the in-

402    CASES IN THE COURT OF APPEALS

Washington and Balt. Turnpike Road *vs.* Balt. and Ohio R. R. Co.—1839.

jury sustained by them by the illegal diversion of their travel and transportation from the said turnpike road as aforesaid upon the railway of the defendants.

If the court shall be of that opinion, then they will render a judgment on the case stated for plaintiff—if otherwise, for defendant—either party to have the same right to appeal from the judgment to be rendered, as if the same was rendered on bills of exceptions. It is agreed that the court shall render judgment pro forma for defendants, the right of appeal being reserved as above. It is further agreed, that if the judgment be reversed in the Court of Appeals, a procedendo be issued to the county court.

The county court rendered a *pro forma* judgment for the appellees, and the appellants brought this appeal.

The cause was argued before BUCHANAN, C. J., STEPHEN, ARCHER, DORSEY, CHAMBERS, and SPENCE, J.

MARSHALL and DULANY for the appellants contended—

1st. That the construction of their road, as prescribed by their charter, for the accommodation of the travel between *Baltimore* and *Washington,* and all intermediate points, confers upon them a right to take toll for the use of their road.

2nd. That this right to take toll arises out of the franchise communicated by their charter, which is in its nature exclusive, and not confined to the limits of their road, but extending on each side of it, so as to prevent injurious competition by the erection of any other rival road, having the same termini, and being designed to accommodate the same travel.

3rd. That the charter by which this franchise was granted to the appellants, is a contract, to be interpreted, although the State is a party to it, by the same rules as are applicable to the construction of contracts generally; that the franchise which it confers is property, and that the charter granted to the appellees to construct their road within the limits of the said franchise of the appellants, without proper compensation to them, was a violation of their vested rights, and void, not only

as against the constitution of *Maryland*, and those fundamental principles which presume the private rights of property inviolable, but also as against the constitution of the *United States*, as it directly impaired the implied obligation of the State of *Maryland*, arising out of the charter to the appellants, that she would do nothing to prejudice her grant to them.

4th. That the right to subscribe to the capital stock of the rail road, conferred upon the appellants by the 4th sec. of the act of 1830, ch. 158, is not such a compensation as they are bound to receive as an equivalent for the violation of their said franchise;—they were entitled to a pecuniary compensation, and to have the amount ascertained in the due course of law by the verdict of a jury. The violation of the appellants' franchise was a legislative act, and the award of compensation a judicial one, and it is not competent, by the constitution of *Maryland*, for the same power that inflicts the injury, to bestow the recompense.

LATROBE and R. JOHNSON for the appellees, insisted—

1st. That the terms used in the plaintiffs' charter, which is the law of their existence, do not in their plain and natural meaning, either restrict the legislature in the exercise of the eminent domain of the State, or vest in the plaintiffs the exclusive right which they claim.

2nd. That these terms have no peculiar, legal, or technical meaning, as is alleged by the plaintiffs, which give them such an effect and operation.

3rd. That the charter of the plaintiffs is a grant from the State to the private corporation created by it, which must speak for itself and be interpreted by its own terms, and that nothing can pass under it by implication.

4th. That the State having in the first exercise of its eminent domain authorised the construction of the defendants' rail road, any diversion of the travel from the turnpike to the rail road, diminishing the tolls of the plaintiffs, is *damnum absque injuria*, for which no action will lie.

5th. That applying these principles to the case at bar, it is

contended, finally, that the plaintiffs' franchise of toll was limited to the road itself, and the travel thereupon; and that while no impediment is put in the way of the actual use of said road, or taking toll from such persons as use the same, no injury is done by the defendants to the franchise of the plaintiffs, for which the law affords a remedy.

The following acts of assembly were referred to in the argument and read by agreement.

1812, ch. 78; 1827, ch. 170; 1828, ch. 139; 1826, ch. 123; 1830, ch. 158; 1831, ch. 330; 1832, ch. 175.

JUDGMENT AFFIRMED BY THE COURT.