The Crawfordsville and Eastern Turnpike Company v. Smith *et al.*

———————◆———————

No. 9575.

## The Crawfordsville and Eastern Turnpike Company v. Smith et al.

GRAVEL ROADS.—*Competing Lines.—Injunction.*—A gravel road company, organized under the general laws of this State, can not prevent by injunction the construction of another competing line of turnpike, which is to be free from tolls.

From the Montgomery Circuit Court.

*P. S. Kennedy, W. T. Brush, E. C. Snyder, G. D. Hurley* and *B. Crane,* for appellant.

*G. W. Paul, J. E. Humphries, G. W. Stafford, J. M. Thompson* and *W. H. Thompson,* for appellees.

FRANKLIN, C.—This is a suit for an injunction, brought by appellant against appellees, for the purpose of enjoining the construction of a certain gravel road. The complaint, as originally filed, contained but one paragraph, to which a demurrer was sustained, and exception taken and leave granted to amend complaint and file second paragraph. It then filed as an amendment a second paragraph of the complaint, to which a demurrer was also sustained, and exception taken.

The case comes here upon the rulings of the court below upon the demurrers.

Appellees insist that the filing of an amendment after the demurrer had been sustained to the original complaint was a waiver of any error in sustaining the demurrer to the original complaint. This would have been true if the original paragraph had been amended, but the plaintiff, by filing a new and second paragraph to the complaint, shows that it did not intend to waive the question of the sufficiency of the first, but intended to stand upon the ruling on the demurrer and reserve the question.

So far as the merits of the controversy between the parties are concerned, it makes but little, if any, difference which one of the demurrers is considered in this court, for each paragraph substantially presents the same question, and that is as to the right of the defendants to construct the proposed gravel road.

The complaint alleges that the plaintiff is the owner of a gravel road consisting of two branches—one running from the city of Crawfordsville in an easterly direction to the town of Shannondale in said county, a distance of ten miles; the other from the city of Crawfordsville in a southeasterly direction, to the town of Fredericksburg, in said county; that each of said branches was fully constructed in every particular, at a large cost, open to the public for travel, and upon which it was receiving tolls; that the defendants contemplated, threatened and were proceeding to construct another gravel road from said city of Crawfordsville in an easterly direction, between and parallel with said branches of said plaintiff's road for a distance of five miles, to a point designated; that said proposed gravel road was to be free from toll to all persons travelling over it, and, if constructed, would break down and destroy the profits of plaintiff's franchise to receive and collect toll for travelling over its said branches.

A map or diagram of plaintiff's branches and defendants' proposed road is furnished in the transcript, by which it appears that plaintiff's Shannondale branch commences at the

The Crawfordsville and Eastern Turnpike Company v. Smith et al.

eastern terminus of Market street, in the city of Crawfordsville, and runs thence northeast to the section and township line on the south side of township No. 19 n. and range 4 w.; thence east on said line, in the direction of said Shannondale. The Fredericksburg branch commences at the eastern terminus of Main street, in said city of Crawfordsville, the same being the first street south of said Market street, and runs east about one-quarter of a mile; thence south, about 60° east, in the direction of Fredericksburg. A toll-house and gate is erected on each of the branches, one-half mile east of the city of Crawfordsville.

The defendant's proposed road commences at the eastern terminus of Wabash avenue, being the second street south of said Main street in the said city, and runs thence east on the half-mile sectional line to its termination, crossing plaintiff's Fredericksburg branch at or near its toll-house and gate, and running parallel with and one-half mile south of plaintiff's Shannondale branch.

Upon these facts the question is presented, Has the plaintiff the right to enjoin the construction of the proposed gravel road?

The first section of the act of 1852, with amendatory and supplemental acts (see 1 R. S. 1876, p. 654), provides as follows: "That any number of persons may form themselves into a corporation for the purpose of constructing or owning plank, macadamized, gravel, clay and dirt roads, by complying with the following requirements." Then follows, in that and the succeeding sections, the manner of organizing a corporation for that purpose.

The thirteenth section provides that when the road has been completed a certain distance, the company may erect toll-gates and collect toll, and limits the amount that may be collected. There is nothing in the law obligatory upon the company to charge and collect toll. There is nothing to prevent the making of a free road if they so desire. Appellant denominates appellees' proposed road as a shun-pike road, and,

therefore, its construction ought to be enjoined; and we are referred to several authorities upon the subject.

The decision referred to as having been made by the Superior Court of Cincinnati, as contained in the extract furnished us, explains what is meant by a *shun*-pike road. We copy the following clause : " The object of the suit was to restrain the defendants from throwing open a strip of land 800 feet long and 40 feet wide, for the purpose of travel, the said land being 300 feet west of the plaintiff's toll-gate, running parallel to their turnpike, the purpose being, as it was alleged, to use it as a shun-pike, and thereby avoid the payment of tolls. The court remarked that no matter what the intention of the defendants was, it clearly appeared that this road running around the toll-house and coming into the main thoroughfare again, is a shun-pike." It means where there is a way or road around the gate and again connecting with the road upon which the gate is situated, so that persons can travel over the turnpike road and around the gate, and thereby save paying toll.

The 17th section of the aforesaid gravel road act gives a gravel road company ample remedies against travelling upon a shun-pike, without resorting to the extraordinary remedy of injunction.

The defendant's proposed road in this case can not be correctly called a shun-pike. It nowhere connects with either of plaintiff's branches so as to divert travel over either of their branches from and around either of their toll-gates; it only crosses the Fredericksburg branch at or near the toll-gate, but has no travelling connection with it, and does not touch the Shannondale branch, but is nearly all of its distance one-half mile therefrom ; it can not, therefore, be a shun-pike, but if constructed will be an independent gravel road. Hence we come back to the question as to the defendants' right to construct the road.

In this State, for nearly thirty years, gravel roads have been constructed under a general law, and not under special char-

ters, and it will be presumed, the record not showing the contrary, that plaintiff's branches were constructed under this general law. The defendants have the same right to construct a road that the plaintiff had to construct its branches, and the plaintiff could not, by the construction of its branches, monopolize the whole southeastern part of the county so as to prevent any other gravel road from being constructed therein. It could not be said that any one of the numerous railroads running into the city of Indianapolis would have the right, under the general railroad law, to enjoin the construction of any other railroad line into the city, although it should, a part of the distance, or even all the distance, run close to and parallel with its line already constructed. Such a monopoly as is contended for would contravene the spirit of our Constitution and the general laws made in pursuance thereof.

Gravel road companies organized under this general law have no exclusive rights over the territory of the country except that included within the right of way for their roads. Other citizens have the right to organize new companies and build new roads as close to the right of way of those already built, or as far distant therefrom, as they may desire, and to cross each other's right of way whenever necessary, upon the proper terms.

In the case of *Auburn, etc., Co.* v. *Douglass*, 9 N. Y. 444, it was held, opinion by SELDEN, J., that legislative acts granting franchises to corporations are to be construed strictly according to their terms; and the grantees in such acts take nothing by implication, either as against the power making the grant or against other corporations or individuals.

The acts authorizing the formation of plank road companies give to such companies no interest or easement in or upon the lands adjoining their road, and no right to restrict the use which the proprietor of such lands may make of his own property. The owner of land may put it to any use which does not infringe on some fixed legal right of another; loss or damage to one person, arising from the use made by another

of his own premises, being *damnum absque injuria,* unless the former has previously acquired some legal right to restrict the use which the latter shall make of such property. Where no such right of restriction exists, it is immaterial what may be the motives of the proprietor for dealing with his own property in a particular way.

In the case at bar, it is not contended that the plaintiff had any easement or fixed legal right whatever to the adjoining or adjacent lands to the right of way of either of its gravel road branches; hence the owners thereof had the right to use their lands as they might desire, and they could themselves construct, or grant the right to others to construct, a gravel road, or any other kind of a road, over their lands, along, by the side of, and parallel with, either of appellant's gravel road branches; and others might, by legal proceedings, condemn such lands, if the right of way was not granted by the owners, and still construct a new road, without the power of appellant to hinder or molest; and the plaintiff has no right to enquire into the motives of the doers, or whether it will in any way be profitable to them, or in what manner it may affect the profits of the plaintiff's road or branches.

We have been referred to a class of cases that depended upon a license from the sovereign, such as the establishment of ferries, where the licensee had paid his license for the privilege of transacting the business. We do not think that this class of cases is applicable to the question under consideration.

Where corporations are created under special charters, there may be some conflict of opinion as to the right to create other corporations, the business of which will come in conflict with the business of those already established; but we think, where the sovereign has granted a special charter to a corporation to conduct a particular business, without granting any exclusive privileges, over that business, the same sovereign may in like manner grant special charters to other corporations to carry on the same business, and where there is a conflict of profits between them, the first is remediless. *Charles River*

*Bridge* v. *Warren Bridge,* 11 Peters, 420. But the questions of special charters and exclusive privileges thereunder are not before us, and we decide nothing in relation thereto. But we do hold that under the general gravel.road law, which is free to all, without limitation or restriction, the construction of a gravel road by a corporation gives it no right to prevent the construction of other gravel roads by other corporations, however much they may come in conflict with its business or the profits thereof; and the plaintiff has no right to say that the defendants have not organized a legal corporation, and for that reason enjoin their proceedings. That question can only be raised by a proceeding in the name of the State.

We conclude this opinion with an extract from the opinion of Chief Justice TANEY, in the celebrated case in 11 Peters, *supra:*

"And what would be the fruits of this doctrine of implied contracts on the part of the States, and of property in a line of travel by a corporation, if it should now be sanctioned by this court? To what results would it lead us? If it is to be found in the charter to this bridge, the same process of reasoning must discover it, in the various acts which have been passed, within the last forty years, for turnpike companies. And what is to be the extent of the privileges of exclusion on the different sides of the road? The counsel who have so ably argued this case, have not attempted to define it by any certain boundaries. How far must the new improvement be distant from the old one? How near may you approach without invading its rights in the privileged line? If this court should establish the principles now contended for, what is to become of the numerous railroads established on the same line of travel with turnpike companies; and which have rendered the franchises of the turnpike corporations of no value? Let it once be understood that such charters carry with them these implied contracts, and give this unknown and undefined property in a line of travelling; and you will soon find the old turnpike corporations awakening from their sleep, and calling

The Crawfordsville and Eastern Turnpike Company *v.* Smith *et al.*

upon this court to put down the improvements which have taken their place. The millions of property which have been invested in railroads and canals, upon lines of travel which had been before occupied by turnpike corporations, will be put in jeopardy. We shall be thrown back to the improvements of the last century, and obliged to stand still, until the claims of the old turnpike corporations shall be satisfied; and they shall consent to permit these States to avail themselves of the lights of modern science, and to partake of the benefit of those improvements which are now adding to the wealth and prosperity, and the convenience and comfort, of every other part of the civilized world. Nor is this all. This court will find itself compelled to fix, by some arbitrary rule, the width of this new kind of property in a line of travel; for if such a right of property exists, we have no lights to guide us in making out its extent, unless, indeed, we resort to the old feudal grants, and to the exclusive rights of ferries, by prescription, between towns; and are prepared to decide that when a turnpike road from one town to another, had been made, no railroad or canal, between these two points, could afterwards be established. This court are not prepared to sanction principles which must lead to such results."

We have made the foregoing lengthy extract for the reason that we think it applicable to the advanced stage of progress and public improvement in the State, and also illustrative of the question under consideration.

We think there was no error in sustaining the demurrer to each paragraph of the complaint, and that the judgment below ought to be affirmed.

PER CURIAM.—It is therefore ordered, upon the foregoing opinion, that the judgment of the court below be and the same is in all things affirmed, with costs.

Opinion filed at the May term, 1882.

Petition for a rehearing overruled at the May term, 1883.