# HAGERSTOWN AND CROSS ROADS TURNPIKE COMPANY

*vs.*

## ABRAHAM M. EVERS ET AL.

*Charters of Corporations under General Incorporation Law :
Competition with—; turnpikes : roads to
avoid toll gates.*

There is no duty on the part of the State to protect corporations incorporated under the General Incorporation Law from the competition of other such corporations.          p. 13

Section 209 of Article 27, making it an offense for any person, with intent to defraud, to pass through any private gate or bars, or along any ground near the road of any turnpike company, does not apply to persons who use a road of their own, to avoid using any part of the turnpike.          p. 19

Certain parties opened a road on their own ground parallelling a turnpike for less than 300 feet until the private road joined a public street. *Held*, that the use of this road by the owners of the land—or by others who had permission to use it free of charge—was not in violation of the law; especially as the private road was reached from a county road, without any use being made of the turnpike, and with no intention to defraud.          p. 18

*Decided January 10th, 1917.*

Appeal from the Circuit Court for Washington County. In Equity. (KEEDY, J.)

The facts are stated in the opinion of the Court.

The cause was argued before BOYD, C. J., BRISCOE, BURKE, THOMAS, PATTISON, URNER, STOCKBRIDGE and CONSTABLE, JJ.

*Alex. R. Hagner* and *Albert C. Ritchie,* for the appellant.

· *Elias B. Hartle* and *Charles C. Keedy* (with whom was *S. M. Wolfinger* on the brief), for the appellees.

Boyd, C. J., delivered the opinion of the Court.

The appellant was incorporated by Chapter 89 of the Acts of 1868 with authority to construct a turnpike road from Hagerstown to Cearfoss, in Washington County, with power to erect a toll-gate or toll-gates thereon. The road is four miles in length and runs in a northwesterly direction from Hagerstown. The only toll-gate erected on it was at a point about a mile from the then limits of Hagerstown, and a short distance southeasterly from what is called Broadfording road, which is a public county road. Under Chapter 257 of the Acts of 1914, the corporate limits of Hagerstown were extended to a point not far from the toll-gate, which is still located where it was originally built, and the portion of the road within the new limits (about a mile) was ceded to and accepted by the city. The distance from the Broadfording road to the city limits is 283 feet, along the turnpike road of the appellant. The appellant owns about half an acre of land on which the toll-gate house is built—it having been conveyed to it by Jennie S. Evers and Abraham M. Evers, her husband, two of the appellees, who own a farm on the westerly side of the turnpike which extends into the present limits of Hagerstown. Milton F. Hoover, another appellee, owns a small farm adjoining that of the Evers on the northwest side, extending to the Broadfording road, and fronting on the appellant's road between the latter and the lot conveyed to the appellant by Mr. and Mrs. Evers.

On the 15th of April, 1916, Mr. and Mrs. Evers made a lease to J. Milton Long and eighteen other persons of a "strip of land not more than twenty-five (25) feet wide" "for the public use of a road or way," for the term of one year with the right of the lessees to renew the lease on the same terms and conditions for a period of five years longer at $15.00 per

annum.   Milton F. Hoover made a lease to the same parties on the same terms and conditions for a strip of land on his farm, excepting there is no money consideration mentioned in the lease.   The road was laid out from a point on the Broadfording road near the appellant's road to the lot of the appellant, purchased of Mr. and Mrs. Evers, and then along and around that lot until it reached the southwest corner of it, and from there it diverged from that lot to a point not far from the turnpike, and then ran southeasterly to the corporate limits of Hagerstown.   The proposed road does not touch the turnpike at any point, but runs into what was formerly a part of it, and is now a street in Hagerstown.

A bill was filed by the appellant against Mr. and Mrs. Evers, Milton F. Hoover, Norman B. Holsinger, Benjamin R. Dorsey, J. Milton Long and William S. Foley, asking for an injunction against Mr. and Mrs. Evers and Mr. Hoover prohibiting them "from granting permission or leasing to the other defendants any lands over which there is to be constructed a 'Shun Pike Road,' " and against the five other defendants named, as well as others said to be unknown to the plaintiff, "from building and constructing any such 'Shun Pike Road' or road around the south side of the complainant's toll-gate to be used for the purpose of evading the payment of tolls to the complainant for the passage of any wagons, carriages or vehicles of any kind passing over the Broadfording road, or over the turnpike road of this complainant to and from Broadfording and Caerfoss to Hagerstown."   An injunction was granted on April 24, 1916. Later the plaintiff filed a petition alleging that before the injunction was served on the defendants the road was built, and praying for a mandatory injunction prohibiting them from maintaining and keeping open the said road, and ordering them to close it.   On May 1st, 1916, an order was passed directing the issuance of that injunction.   An answer was filed by Mr. and Mrs. Evers and Mr. Hoover and another by Messrs. Holsinger, Dorsey and Long.   A motion to dissolve the injunction was

made, testimony was taken and after a hearing the Court passed a decree dissolving both injunctions. From that decree this appeal was taken.

All of the defendants and all of the lessees except Mr. and Mrs. Evers and William S. Foley, live on the Broadfording road. Just where it ends is not very clearly shown in the testimony, but it crosses the turnpike which runs from Williamsport, Md., to Greencastle, Pa., and apparently reaches the appellant's road again at Cearfoss, where the latter ends. There are also two county roads running from the Broadfording road to the appellant's road, as shown by a plat filed. William S. Foley lives on the appellant's road, but his testimony shows that he had nothing to do with the new road, excepting he was employed to work on it a day and a half, but never used and did not expect to use it. The appellant charges those coming from the Broadfording road two cents toll each way for a one-horse vehicle, and four cents each way for a two horse vehicle to Hagerstown. After the limits of Hagerstown were extended the people along the Broadfording road applied to the appellant and to the County Commissioners to have the toll reduced, and, failing in that, a bill was offered in the Legislature to require a removal of the toll-gate from its present location to a point half a mile further from Hagerstown. That bill passed the House of Delegates, but failed in the Senate, and the lessees then built the new road, apparently to secure from appellant a reduction of the tolls. They claim that the tolls charged are exorbitant, and testified in substance that their object in building the road was to have the tolls reduced and that they did not intend to permit it to be used by any person not living on the Broadfording road, excepting the Evers, through whose farm it runs. They only use the appellant's road in going to Hagerstown 283 feet, since the city limits were extended, but there has been no reduction of tolls.

The charter of the appellant was granted at the same session of the Legislature which adopted the General Corpora-

tion Laws of the State, and included provisions for the formation and regulation of turnpike, plank road and passenger railway companies. By section 216 of Chapter 471 of the Acts of 1868, being the General Corporation Law referred to, it was declared that all corporations theretofore formed under the General Laws of the State relating to corporations, or under any special Act, were entitled to the benefit of and to be subject to all the regulations in that article contained for the government of the corporations therein referred to, so far as applicable to said corporations. There is nothing in the charter which indicates that that company should have more rights and powers than one incorporated under the General Laws which were to be submitted to the Legislature at the same session and which were then adopted.

An examination of the General Laws will fail to show any intention to prohibit another turnpike company, or any kind of a road, from being built which might interfere with tolls of one so incorporated, and the same may be said of the charter of appellant. Any five citizens of the United States, a majority of them being citizens of this State, could then organize a turnpike company, and since 1908 three adult persons, one of whom is a resident of this State, can do so. It is not only not necessary to apply to the Legislature for such authority, but the Legislature was prohibited by the Constitution from granting a charter for a corporation which the general laws provided for. It is true that the appellees did not incorporate, but we refer to these facts to show that the conditions have entirely changed from what they once were, and there is no longer any necessity for a State offering special inducements, in order to have a turnpike company organized, as there was in the early days of this and other States. It can not be said that the State is under any obligation to protect a corporation formed under the General Laws, or at such time as the appellant was chartered, from other corporations of the same kind, as long as the new corporation does not violate existing laws or interfere with the

legal rights of the first company.  Such company has no right to exclude others from its territory, or to prevent them from reducing its income by competition.  Those interested in a turnpike company chartered in this State as late as 1868 presumably knew that it was no longer an object for special protection and aid from the State.

There is nothing whatever in the General Laws of 1868 or in the charter of appellant to suggest that the State would afford special protection to the appellant from interference with its tolls, or prohibit any other persons from building a road which might affect the appellant.  It may be well to remember that Section 107 of Ch. 471 of the Acts of 1868, now Section 382 of Article 23 of Annotated Code, provides that "Corporations for making turnpikes or plank roads or passenger railways outside of the limits of the City of Baltimore may be formed," etc.  Turnpikes can claim no more protection from the State than passenger railway companies, under the statute, and it is common knowledge that passenger railways—not only those in Baltimore City, but in the counties—have at times had serious inroads upon their income by motor busses, running in some instances on the same road which such a passenger railway company is built upon, and in others on a road nearby.  There can be no reason for giving more privileges to turnpike companies than to passenger railway companies organized under the same section of the statute.  The policy of this State, indeed, of the whole country, has of late been to encourage, and not to shut out competition, as there is no longer any necessity for it in order to induce capitalists to invest their money in new enterprises.  Indeed, many of the States, including Maryland, have adopted the plan of building good roads, and of encouraging the counties to build others, and thus make the public roads free from tolls (which sometimes seem excessive), and in many ways beneficial to the public at large.  Of course, they should not, and can not be permitted to interfere with the vested rights of corporations whose stockholders have

invested their money in them, but the point we make is, that no company organized at such time as the appellant was, or since, has the right to expect the State to exclude or prevent competition, as was apparently done in some jurisdictions in former years.   Without quoting from it, we would refer here to the opinion of CHIEF JUSTICE TANEY in *Charles River Bridge Co.* v. *Warren Bridge Co.,* 11 Peters, 420, where he so forcibly stated what would be the results if the privileges granted turnpike and other companies were construed to be exclusive.   What was there said might happen was well illustrated in *W. & B. Turnpike Co.* v. *B. & O. R. Co.,* 10 G. & J. 392, where the turnpike company actually sued the railroad company for a diversion of its travel and transportation by building and operating a railroad from Washington to Baltimore, between which points the turnpike was built, although the railroad was built under special legislative authority.   The opinion delivered by CHIEF JUSTICE TANEY above referred to caused a radical change in the decisions of some of the courts.   Those of CHANCELLOR KENT in *Croton Turnpike Road* v. *Ryder,* 1 Johns. Chy. 611, and of the *Newburg & C. Turnpike Road* v. *Miller,* 5 Johns. Chy. 101, seem to have been largely responsible for the doctrine established in some jurisdictions with reference to the exclusion of others from the territory occupied by a turnpike or ferry company.   While all courts must have the highest respect for the decisions of that great chancellor, the doctrine he announced as the foundation for those decisions was rejected by the Supreme Court of the United States in the case mentioned above, although both his commentaries and his decision in *Newburg Turnpike Co.* v. *Miller* were cited in argument.   But the Court of Appeals of New York, in *Auburn & Cato Plank Road Co.* v. *Douglass,* 9 N. Y. 444, expressed its disapproval of those decisions. That was a proceeding "to restrain the defendant from making a way upon his own land, by the use of which travelers were enabled to avoid one of the plaintiff's toll-gates."   It

was alleged that the road was made "with intent to injure and defraud the plaintiffs." It was there held, quoting from the syllabus for convenience, that "The owner of lands adjoining a plank road will not be enjoined from opening a way on his own land, by the use of which travelers are enabled to avoid one of its toll-gates. It is a lawful use of the land by the owner; and as to the plank road company, *damnum absque injuria."* JUDGE SELDEN, who delivered the opinion, said the plaintiffs must rest their claim to restrict the defendant in the use which he shall make of his own property upon one of two grounds, viz: "1. That the case is within the scope of that maxim of the common law, which requires every man so to use his own property as not to inflict injury upon others, or, 2. That the statute which creates the plaintiff's franchise impliedly enacts whatever is necessary to protect them in its enjoyment. Unless this action can be sustained upon one of these grounds there is no sound legal principle upon which it can rest." He then at length considered the two grounds and held against the plaintiffs. He referred to the case of *Charles River Bridge* v. *Warren Bridge* at length, as overthrowing the doctrine of the extension of a franchise by implication, which CHANCELLOR KENT and others had announced. Some criticism has been made by counsel of the opinion below which stated that CHANCELLOR KENT admitted his error in a late edition of his Commentaries. After citing cases in Virginia, Connecticut and New York, JUSTICE SELDEN thus speaks of it: "CHANCELLOR KENT admits, in one of the later editions of his Commentaries, that these cases have entirely subverted the doctrines advanced by him. (See 3 *Kent's Com.* 459, in note; also *Greenl. Cruise, Tit. Franchises,* sec. 29)." We will leave that to the quotation made, without deeming it necessary to say more on the subject. JUSTICE SELDEN also said: "If, then, as established by these cases, a corporation is strictly confined to the privileges conferred by its charter, and can take no implied rights, as against the law-making power,

*a fortiori*, should it not be permitted to encroach, by implication, upon the rights of individuals who are in no respect parties to the contract between the Legislature and such corporations." He agreed with CHANCELLOR KENT that the motives of the parties can not be inquired into. See also *Fort Plain Bridge Company* v. *Smith*, 30 N. Y. 44. As those cases were decided by the highest Court in that State, it is scarcely necessary to say that they, and not the Chancellor's decisions, prevail, although, of course, if we were of the opinion that the Chancellor's views were correct, we could adopt them. But it is manifest that he reached the conclusion he did because of his error in extending the powers of the corporation by implication, instead of confining them to their charters. The Act of 1868, Ch. 471, sec. 51, provides that: "No corporation shall possess or exercise any corporate powers, except such as are conferred by law, and such as shall be necessary to the exercise of the powers so acquired."

In *Crawfordville & E. Turnpike Co.* v. *Smith*, 89 Ind. 290, that Court said that a Shun Pike Road "means where there is a way or road around the gate and again connecting with the road upon which the gate is situated, so that persons can travel over the turnpike road and around the gate, and thereby save paying toll." In that case it was held that a gravel road company, organized under the general laws of the State, could not prevent by injunction, the construction of a competing line of turnpike which was to be free from toll. It was also said there that, "In the case at bar it is not contended that the plaintiff had any easement or fixed legal right whatever to the adjoining or adjacent lands to the right of way of either of its gravel road branches; hence the owners thereof had the right to use their lands as they might desire, and they could themselves construct or grant the right to others to construct a gravel road, or any other kind of a road, over their lands, along, by the side of, and parallel with either of appellant's gravel road branches."

The solicitors for the appellants cited a number of cases and have presented the views contended for by them as forci-

bly as could well be urged, but we can not, as we are now for the first time called upon to pass on the question, adopt a doctrine that for reasons here stated, and given in some of the authorities we have cited, seems to us to be so far out of date, even if it could have been properly adopted in this State at an earlier period. Some of the cases cited by the appellant are clearly distinguishable from the one before us. For instance, considerable reliance is placed upon the opinion of CHANCELLOR MARTIN, in *Ratcliffe et al.* v. *Pulaski Turnpike Co.,* which is published in full in the report of that case when before the Supreme Court of Arkansas, 69 Ark. 264, 63 S. W. 71. But a careful examination of it will show that there was in that case an *exclusive* charter. The County Court granted the powers under the laws of that State, but the statute prohibited that Court, after conferring the privileges of the Act upon any person, from conferring the same or like privileges upon any other person to the injury of him upon whom such privileges were first conferred. In *Clarksville & R. Turnpike Co.* v. *Montgomery Co.,* 100 Tenn. 417, 45 S. W. 345, the question was whether the grant by the Legislature of a franchise, which was *not exclusive,* prevented the Legislature from granting another. It was held that it did not, and that the fact that a portion of a turnpike was used for a free bridge established by the county, near the toll bridge of plaintiff, did not give it cause for complaint. In *Same* v. *City of Clarksville,* 36 N. W. 979, it was held that a county road which would be of great convenience to people living between two roads, one of which was a turnpike, by shortening their line of travel to the town in which the road terminated, and would in high water be of great utility, was not a "Shun Pike," though the effect would be to decrease the business of the Turnpike Company. Those cases would seem to modify to some extent expressions in earlier cases in that State, but be that as it may, they are not in accord with what we understand to be the better doctrine to be announced under present conditions.

In *Board of Internal Improvement Co. v. Stanford & L. C. Turnpike Road Co.,* 91 Ky. 291, 15 S. W. 782, the charter of the turnpike company provided that no lateral public road to the same place, within one mile of the turnpike, should be opened, and all such roads existing should be discontinued, it was held that that did not prevent a turnpike road from being constructed and opened as a private enterprise. That company was organized under the General Laws. It is admitted by the appellant that the Legislature could grant another charter which might injure it, but, as we have seen, the Legislature does not now grant charters, and any three individuals can procure one, without asking the permission of the Legislature. Although a charter has not been taken out by these parties, the land to be used belonged to some of them, and the others were granted the privilege by the owners to so use it, the doing of which does not authorize an injunction at the instance of the appellant, under the conditions shown by the record.

Without further prolonging this opinion by citing or discussing other cases, we can have no hesitation in affirming the decree of the lower Court. In the first place we think there is much force in the opinion of the learned Judge when he speaks of the unreasonable charges for the use of the road for a distance of 283 feet. It is true that a turnpike company may be entitled to collect tolls from those going through its gates, regardless of the distance they have come, but in this instance the people who complain are known to the appellant to only use the road 283 feet, and yet they are made to pay as much as they did when the appellant was required to maintain a mile of the part of the road that those people used which it is now relieved of keeping up. It can hardly be said that a charge of two cents a mile each way for 283 feet is not unreasonable and exorbitant, if that is all the use made of the road by the defendants, which the evidence tends to show. Therefore when a Court of equity is called upon to grant an injunction it may well decline to do so on the ground that the charges sought to be enforced by means of

the injunction are inequitable and unreasonable, but regardless of that, this is not in our judgment what can properly be called a "Shun Pike Road." There may be cases holding that it is not necessary that such road joins or is connected with the road that complains, but we cannot adopt that view. The people proposing to use this road will not use the appellant's road at all in going to Hagerstown. Our Statute, Section 209 of Article 27, provides that, "If any person or persons shall, *with intent to defraud* any turnpike or other company authorized by law to receive tolls *for use of its road,* pass through any private gate or bars, or along any grounds near said road, to avoid any toll gate, and escape payment of tolls, or shall practice any fraudulent means to lessen and avoid the payment of any just tolls, or shall refuse to pay tolls he is bound by law to pay, each and every such person shall be guilty of a misdemeanor," etc. That is a prohibition against travellers using a turnpike until they approach a toll gate and then going around the gate, or avoid it, in order to evade payment of toll. That is, of course, a fraud and should be punished, but in this case the people do not want to go on the appellant's road at all. They use the county road, and then propose to go over the new one. It can not be said in any just sense that it is done with *an intent to defraud* the appellant. If any persons use the appellant's road until they reach the junction between it and the Broadfording road, and then turn off to the new road, that will be strong evidence that it is done to avoid payment of the tolls they justly owe, and unless some proper excuse is shown, it may be that they can be punished under that statute, but there is no evidence tending to show such conditions as to these parties. So without further discussing the questions involved, we will affirm the decree below.

*Decree affirmed, the appellant to pay the*
*costs.*