JAMES S. T. STRANAHAN et al. Appellants, *v.* THE SEA VIEW RAILWAY COMPANY OF CONEY ISLAND, Respondent.

The provision of the general railroad act (§ 28, chap. 140, Laws of 1850), giving to every railroad company authority to construct its road across any street or highway which the route of its road shall intersect, was not repealed by implication by the acts of 1869 and 1874, providing for the laying out of the highways or avenues, known as "Ocean Parkway" (chap. 861, Laws of 1869; chap. 583, Laws of 1874), so far as it pertains to those highways; they are highways within the meaning of the railroad act, and railroads have the same authority to cross them as they have to cross other highways.

The act of 1871 (chap. 609, Laws of 1871), declaring that "no railway upon which locomotive steam shall be used, or is or shall be authorized or intended to be used as a motive power," shall be constructed across certain avenues therein mentioned, without the approval of the State engineer, has no application to that portion of "Ocean Parkway" constructed under said act of 1874.

The said act of 1871 has reference to railroads moving cars in the ordinary way by means of locomotive engines, it does not include railways moviny their cars by a propelling rope or cable attached to stationary power.

Accordingly, *held*, that a railroad corporation organized under the act of 1866 (chap. 697, Laws of 1866), for the purpose of constructing an elevated railroad to be operated "by means of a propelling rope or cable attached to stationary power," had authority under the said provision of the general railroad act, which by said act of 1866 is made applicable to corporations organized under it, to cross that portion of "Ocean Parkway" constructed under the act of 1874, which was intersected by the route of its road.

(Argued February 3, 1881; decided March 1, 1881.)

APPEAL from judgment of the General Term of the City Court of Brooklyn, entered upon an order made December 30, 1880, which affirmed a judgment in favor of defendant, entered upon a decision of the court on trial at Special Term.

This action was brought to restrain defendant from constructing its road across the highway or avenue in Kings county known as "Ocean Parkway."

The facts appear sufficiently in the opinion.

*B. F. Tracy* for appellants. The declaration of the act authorizing the construction of the Ocean Parkway that it is a highway, means only that it is a highway in a limited sense, and not one to be especially made subject to the provisions of the general railroad act (Laws 1850, chap. 137), as to the running of a railroad over, along or upon it. (Laws 1874, chap. 583, §§ 2–11; Laws 1875, chap. 489, §§ 8, 14; Laws 1876, chap. 352, § 7.) The land embraced in the Parkway having been acquired and taken for a public use inconsistent with its use for railroad purposes, railroads cannot now be constructed across, along or upon it. *In re B. & A. R. R. Co.*, 53 N. Y. 574, 578, 589; *In re City of Buffalo*, 68 id. 167; *In re Roch. Water Commrs.*, 66 id. 413; *In re N. Y. & B. B. R. Co.*, 20 Hun, 201; Mills' Em. Dom., chap. 5, § 45.)

*Jesse Johnson* for respondent. The defendant has the right to construct its road across the highway in question. (6 Edmunds' Statutes, 809, § 2; 3 Edmunds' Statutes at Large [2d ed.], 627; 6 id. 367.) Ocean Parkway is a highway, within the meaning of section 28 of the General Railroad Act. (Laws of 1874, § 1, p. 781; id. 783, §. 7; *Washington Cemetery* v. *The Prospect Park & Coney Island R. R. Co.*, 68 N. Y. 591; *Matter of the N. Y. C. & H. R. R. R. Co.*, 77 id. 256, 259, 260.) A provision in the act of 1874, devoting thirty feet on either side of the main highway to court-yard purposes, has no relation to or effect on the construction of railroads. (*Matter of Commrs. of Central Park*, 50 N. Y. 493, 497.) The provision that "no building or erection" shall be placed on the court-yard states but meagerly and imperfectly the rule of the common law as to highways. (*Whetmore* v. *Tracey*, 14 Wend. 250.) It cannot be claimed that because the park commissioners have the power to govern and control the highway they have the power to prevent railroads from crossing it. (*Dunham* v. *Trustees of Rochester*, 5 Cow. 462; *Thompson* v. *Schoonmaker*, 2 Seld. 92; 1 Abbott's Digest of Law of Corporations, 512, beginning at part 322.)

EARL, J.    The determination of this case depends upon the construction of various acts of the legislature, the first of which is the act chapter 861 of the Laws of 1869, entitled "An act to lay out and improve a public highway or avenue from Prospect park, in the city of Brooklyn, toward Coney Island, in the county of Kings." That act authorized and directed the Brooklyn park commissioners to lay out a public highway or avenue, not more than two hundred and ten feet wide, from Prospect park to the lands of the Prospect Park Fair Grounds Association, and to acquire lands for, and to open and grade the same, and conferred the exclusive charge and management of the same upon them after it was opened. And the act provided that no buildings or other erections, except porches, piazzas, fences, fountains and statuary, should remain or be placed upon the avenue within thirty feet from the outside lines thereof; which space on each side of the avenue should be used for court-yards only, to be planted with trees and shrubbery, and otherwise ornamented at the discretion of the respective owners or occupants thereof. The next act is chapter 583 of the Laws of 1874, entitled "An act to lay out and improve a public highway, or avenue and concourse, in continuation of a public highway or avenue heretofore laid out from Prospect park, in the city of Brooklyn, toward Coney Island, in the county of Kings." That act authorized and directed the park commissioners to lay out and improve a public highway or avenue, commencing where the avenue opened under the prior act terminated, of the same width as that avenue, and continuing the same across Coney Island to the Atlantic Ocean; and it also authorized them to lay out, open and improve a concourse or shore road, at the southerly terminus of the avenue thus to be opened, six thousand feet in length along the ocean beach and five hundred feet wide, and to acquire the lands for such avenue and concourse; and it placed the avenue and concourse under their exclusive charge and management. The act also contained the same provisions as to the land on each side of the avenue, to the extent of thirty feet in width, as were contained in the prior act.

In neither of the acts thus far cited was a name given to the avenue authorized to be constructed. But in the act (chap. 489 of the Laws of 1875), which amended the act of 1874, the avenue authorized to be constructed under the act of 1874, was called the "Parkway." In the amendatory act, the commissioners were authorized to lay out the concourse one thousand feet wide instead of five hundred as previously authorized.

The act of 1874 was again amended by the act (chap. 352 of the Laws of 1876), and in that act the whole avenue from Prospect park to the ocean is called the Ocean Parkway, and by that name the avenue has been known.

The defendant is a corporation organized in 1880, under the act (chap. 697 of the Laws of 1866), which is an act supplementary to the general railroad act of 1850. That act authorizes the formation of companies for constructing, maintaining and operating railways for public use " in the conveyance of persons and property by means of a propelling rope or cable attached to stationary power; " and it confers upon the companies organized under it all the powers and privileges, and subjects them to all the liabilities mentioned in the general railroad act of 1850, so far as comprised in the first twenty-six sections and the twenty-eighth section thereof. The defendant's road is an elevated railroad, and prior to the commencement of this action, it had lawfully constructed its road on each side of the avenue to the exterior lines thereof, and it was about to construct its road across the avenue at an elevation of twenty-two feet above its surface about seven hundred feet northerly of the concourse. The method of construction intended as found at the Special Term was as follows: "By constructing a bridge (which is to constitute a part of said railroad) of iron or steel twenty-two feet above its surface with seventy feet spans and having supports on said highway on either side of the main drives, and on the exterior lines thereof, and in the portion of said highway or avenue by said acts, provided to be used for a court yard on either side thereof, and not otherwise and that the defendant offers to build said bridge in such an ornamental manner as may be desired."

The plaintiffs commenced this action to restrain the construction of the railway over the avenue, and now contend that they were improperly defeated in the court below for several reasons which must now receive consideration.

The general railroad act of 1850 (chap. 137, § 28), gave every railroad company authority to construct its road across any street, highway, plank-road or turnpike which the route of its road shall intersect, and the defendant has the benefit of this provision by virtue of the act of 1866. The plaintiffs contend that this provision, so far as pertains to the Ocean Parkway, was repealed by implication by the acts of 1869 and 1874. Repeals by implication are not favored, and we can find nothing in the acts referred to showing a legislative intention to deprive railroads of the authority to cross this highway which they have to cross other highways. The right to cross the avenue by a railroad is certainly not so inconsistent with the right of the public to use it for the purposes intended by the acts of 1869 and 1874, that the two rights cannot stand together. We cannot say even that the crossing proposed will, to any great extent, mar the beauty of the avenue or impair its usefulness for the purposes intended.

It cannot be denied that the Ocean Parkway is a highway. It is called so in the acts of 1869 and 1874, and it was built and is maintained like other streets and highways, except that it is placed under the charge of the park commissioners instead of the authorities having charge of other highways. While it, doubtless, has an intimate connection with Prospect park, it is no part of the park. It is a highway within the meaning of the general railroad law.

It is also claimed that because the land for the Ocean Parkway has been acquired for one public use, it cannot be taken for another without express legislative authority. But there is express legislative authority. It is found in the provision of the act of 1850, above cited, and hence the authorities cited by the learned counsel for the plaintiffs (*In re City of Buffalo*, 68 N. Y. 167, and *In re Boston & Albany R. R. Co.*, 53 id. 574), are not applicable.

The defendant can, therefore, build its railroad over this highway unless forbidden by something contained in the act (chap 609 of the Laws of 1871). That act provides, that "no railway upon which locomotive steam shall be used, or is or shall be authorized or intended to be used as a motive power," shall be constructed across Flatbush avenue, Ocean avenue, Coney Island Plankroad, Coney Island boulevard, Franklin avenue boulevard, the Second, Third, Fourth and Fifth avenues in any of the towns of Kings county, without the approval of the State engineer as provided in the act. It is undisputed that no application has been made to and no action taken by the State engineer under that act. The defendant claims that the act has no application to that portion of the Ocean Parkway over which it proposes to construct its road, and that it has no application to its railway.

The Parkway is not mentioned in that act, and, looking at the act alone, it is difficult to perceive that it pertains in any way to the Ocean Parkway. But it is claimed that Coney Island boulevard is the same highway known as the Ocean Parkway, so far as the same was constructed prior to the act of 1871, and that may be assumed. That act, however, has no application to so much of the Ocean Parkway as lies south of the lands of the Prospect Park Fair Grounds Association. That part was constructed after 1871, under the act of 1874. The act of 1871 had reference to boulevards and avenues then in existence. The act of 1874 was not an amendment of the act of 1869. It does not even refer to that except for the purpose of specifying the starting point of the highway thereby authorized to be constructed. It is a full and complete act by itself. It is true that the highway authorized to be constructed by the act of 1874 is a continuation of that authorized to be constructed by the act of 1869, and that the acts are quite similar, and that each places the highway which it authorizes to be constructed under the same management and control. But what was known as Coney Island boulevard in 1871 did not embrace the highway which the defendant proposes to cross with its railroad. It does not appear that the continua-

tion of the Parkway was even contemplated before 1871, or that the continuation was part of any system before that time devised. We are, therefore, unable to perceive how that act can be made to apply to this case.

But there is still another answer to the application of the act of 1871 to this case. That act only applied to a railway upon which locomotive steam shall be used as a motive power. It plainly has reference to railways moving cars in the ordinary way by means of locomotive engines. It has no reference to railways moving their cars in any other way, as by horses, or by a propelling rope or cable attached to stationary power, the mode of moving its cars proposed by the defendant. A stationary engine is not a locomotive engine and does not, according to general understanding, use locomotive steam. Locomotive steam is such as is used in a locomotive engine, and a locomotive engine is one which moves cars by its own forward and backward motion.

We are, therefore, of opinion that the decision in this case was plainly right, and that the judgment should be affirmed, with costs.

All concur.

Judgment affirmed.