THE PEOPLE OF THE STATE OF NEW YORK EX. REL. THE THIRD AVENUE RAILROAD COMPANY, RESPONDENT, v. JOHN NEWTON, AS COMMISSIONER OF PUBLIC WORKS, APPELLANT.

*Right of a completed horse railroad, in New York city, to introduce the cable system.*

The relator, organized under the general railroad act, and authorized by license from the city of New York to lay its tracks in certain streets of that city, commenced making excavations along the line of its road, after its tracks had been laid and had been in operation for some years by the use of horse power, for the construction of a cable road. Such excavations involved the maintenance of a trench in the street, with vaults therein deeper than the trench itself, and occasional vaults of much larger dimensions, for the purpose of operating the cable to be placed therein.

The license from the city authorized the relator to lay a double track for its railroad, and further provided that no steam power should be used on any part. of the road for propelling cars.

478  PEOPLE ex rel. THIRD AVE. R. R. CO. v. NEWTON.

FIRST DEPARTMENT, MAY TERM, 1888.

In this proceeding, brought to obtain a peremptory *mandamus* directing the commissioner of public works to give to the relator a written permit to begin and continue such excavations along its route:

*Held*, that the relator had no authority, having completed its road, to make such excavation for the purpose of introducing the cable system upon it.

That the agreement between the relator and the city was to build a railroad, and that the road having been completed the relator had no authority thereafter to build a new road upon an entirely distinct and different principle.

That the introduction of the cable system which was to be moved by steam power, although the steam engines were not placed within the body of the street itself, was in violation of the condition prescribed by the city in its license that no steam power should be used on any part of the road for propelling cars.

APPEAL from an order of the New York Special Term granting a motion for a peremptory *mandamus* directing the commissioner of public works, in the city of New York, to give to the Third Avenue Railroad Company a written permit to begin and continue excavations in the streets of that city, along the line of its route, for the purpose of laying cables between the rails of each of its tracks.

*James C. Carter*, for the appellant.

*John E. Parsons*, for the respondent.

VAN BRUNT, P. J.:

The question involved in this appeal depends upon the rights which the Third Avenue Railroad Company has acquired by their organization under the general railroad act, and by the grant or agreement between the city and the company, legalized by the action of the legislature.

The Third Avenue Railroad Company claim the right, under their charter and agreement, to begin and continue excavations along their road for the purpose of laying cables in each track between the present rails, these cables to be moved by stationary engines, situated out of the line of the street. Such excavations are to be several feet wide and several feet deep.

The appellant claims that the railroad company has acquired no right or power to make any such excavations: First. Because it would be subjecting the streets to an additional servitude not contemplated by the agreement between the city of New York and the railroad company; second, because it is provided by said agreement that no steam power be used on any part of the road for

PEOPLE ex rel. THIRD AVE. R. R. CO. v. NEWTON. 479

First Department, May Term, 1888.

propelling cars; and, third, because the power to build a road has been exhausted, and a new road cannot now be constructed. It seems, very evident that an additional servitude would, by this structure, be imposed upon the streets, which was not contemplated by the grant or agreement between the Third Avenue Railroad Company and the city. It was in the contemplation of the parties that a railroad should be constructed in Third avenue, the cars to be propelled by some motive power other than steam. But it was not intended that the railroad company should have the right to excavate and maintain a deep trench in the street, with numerous vaults in such trench deeper than the trench itself, and, occasionally, vaults of much larger dimensions, for the purpose of operating the cable to be placed therein.

The license or grant conferred by the agreement was to lay a double track for a railroad. It was not contemplated that storage room for the motive power, which was to be used upon said road, should be provided in the streets. Buildings of this character have no connection whatever with the laying of a track for a road. But they are provisions for the operation of a road, the construction of which upon the public streets was not at all contemplated by the terms of the grant in question.

The provision in the agreement that no steam power was to be used on any part of the road for propelling cars, seems, also, to be equally fatal to the claim of the railroad company.

This objection is attempted to be answered by the claim that the cars are not propelled by steam power, but by a cable, the movement of the cable being communicated by steam, the apparatus for generating which is situated off the street and upon private property. The fallacy of this claim seems to be illustrated when we consider that, if the same reasoning is applied, a locomotive is not propelled by steam. The only part of the machinery which is propelled by steam is that part of the piston which comes in direct contact with the steam in the cylinder of the engine. The locomotive is propelled by the motion of the driving wheel. It is true that the motion is communicated to the wheel by the movement of the piston in the cylinder, but it is no more the motive power imparting motion to the engine than is the cable to which the cars are attached, and to which motion is imparted by its connection with the steam

480 PEOPLE ex rel. THIRD AVE. R. R. CO. v. NEWTON.

First Department, May Term, 1888.

engine. Or, to use another illustration, it may be said that, upon what is called a steam railroad, none of the cars are propelled by steam, because the power is communicated to them by the coupler which attaches them to the engine, and, as a conclusion, as the engine is not propelled by steam, certainly the cars are not; if this reasoning is correct, then no cars on any steam railroad are propelled by steam.

There must be some motive power for propelling the cars. What is that motive power? The cable of itself is no motive power. It is an inert mass. Its motive power is required to be communicated to it. This is done by steam precisely the same as the motive power is communicated to the car from the steam contained in the engine upon the steam railroad, the car being propelled by steam. That is the motive power which is used for propelling the cars, and it is entirely immaterial as to whether the coupler is a link or a chain. The chains may extend from the Harlem river to the battery, but the motive power which propels the cars attached to that chain is steam, and the propelling power is used upon the road, no matter where the steam may be generated.

But it is claimed that, although the power may be steam, yet no steam is used upon the road, and it is the use of steam *upon the road* that is prohibited. The language of the prohibition is that no steam *power* be used in any part of the road for propelling cars. It is not that no steam shall be used on the road for propelling cars, but that no steam power shall be used for that purpose, or, in other words no steam shall be used as a motive power, on any part of the road. As has been seen, the propelling power is undoubtedly steam, and it is upon the street that the power is applied, the cars being propelled on the street, and as the motive power is steam, steam power is used on the street for the propelling of the cars. Suppose a tenant should take a lease of a building which contained a covenant against the use of steam power in any part of the building leased, and then should place a boiler and engine in an adjoining building, and by belts, pulleys and shafts, carry the power into the building leased, and use the same for the purpose of propelling the machinery therein, would not such use be a breach of the covenant? Clearly so.

The third ground, which has been suggested on the part of the appellant herein as being fatal to the claim made by the Third Avenue Railroad Company, the respondent, is that the power con-

ferred by the agreement between the company and the city was to build a railroad, and that, the road having been built, the company cannot now, under that power, build a new road upon an entirely distinct and different principle. The railroad company would have a right undoubtedly to repair the road which they had already built, but after having determined the character of the road which they were to build, and having built such a road, they cannot now begin an entirely new enterprise and enter upon the construction of a new road. A consideration of the terms of the agreement greatly strengthens this point, because the road was provided to be. constructed in a particular way, with a particular rail, or such other as might be approved by the common. council and the street commissioner, and the construction was to be commenced within six months and completed to Forty-second street within one year from the passage of the resolution, and from Forty-second street to the Harlem river as fast as the Third avenue should be graded and in a proper condition to lay rails thereon. Here was a manifest restriction as to the power of the Third Avenue Railroad Company to construct this road. They were bound to construct it with diligence, to Forty-second street within a limited time, and to construct the balance as soon as the street was in condition for the purpose of laying the rails. They having exercised the power thus conferred, and having built the road, there remains no power in the corporation to construct an entirely different road which in no way complies with the conditions required.

In consideration of the rights which have been conferred by the legislature, the respondent company seems to claim that the grant is to be construed most favorably to the railroad company. We think, however, that this is not the construction to be placed upon the acts under which the respondent claims. Unless it can be shown that the power it claims has been granted to it by the terms of the grant, such grant is not to be amplified by the construction or legislative action of the court. The claim that the exception in respect to steam power refers to the use of locomotives or dummy engines is not supported by the language of the agreement. It certainly was not contemplated in this agreement that the Third Avenue Railroad company should have the right to occupy just so much of the street as it pleased for the purpose of the operating of its road. If the

company have the right to occupy four feet deep throughout the length of the road, and nine feet wide, there is no reason why they may not claim, if it becomes necessary or useful for them in the operation of their road, that they can occupy thirty feet deep.

It is a question of right, not of expediency. It may be true that the city would be benefited by the operation of a cable road, instead of one operated by horse power. But this is a consideration which cannot be given force to in the construction of this grant because the court has no right to confer rights by its decision which have not been conferred by legislative action.

It seems to be clear, therefore, that this would be imposing additional servitude upon the streets not contemplated by the grant, which it was not intended the company should enjoy, and also that the power used for propelling these cars is steam power, which is excluded by the very terms of the grant itself.

The fact of incorporation under the general railroad act of 1850, conferred no authority upon the respondent to construct its road upon any street in the city. That power it derived from another and different source, from the ratification of the agreement between the city and the railroad company by the legislature, and its sole authority to act in the building of its road was derived from that legislation. It existed as a corporation because of its incorporation under the act of 1850, and it acquired the right to exercise its franchise by reason of the agreement and the legislation legalizing the agreement. It, therefore, acquired no greater franchise from the city of New York than that which was conferred upon it by this agreement thus legalized, and can claim no greater rights than those conferred upon it by that agreement, and are bound by its limitations no matter how extensive its power might have been under the general railroad act.

We are of opinion, therefore, that the order appealed from should be reversed, and the motion denied with costs.

Brady, J., concurred.

Bartlett, J.:

I concur on the ground that the proposed construction would impose an additional and unauthorized burden or servitude upon a public street.

Order reversed, and motion denied, with costs.