Filed March 12, 1891.

---

No. 15,353.

## The Indianapolis Cable Street Railroad Company v. The Citizens Street Railroad Company.

Monopoly.—*State or Municipality Granting.—Constitution.*—As a general rule neither the State nor a municipal corporation can grant or create a monopoly. The clause in the Constitution forbidding the granting of "privileges or immunities which upon the same terms shall not equally belong to all the citizens," does not declare all monopolies unlawful. That clause applies only to such things as are of common right, and is merely to be applied to such things as are in their nature a monopoly.

Corporation.—*Grant of Franchises.—How Construed.—Exclusive Privilege.*—Grants of franchises by public corporations to individuals or private corporations are to be strictly construed, and no exclusive priv-

ilege passes, unless it be plainly conferred by express words or necessary implication.

SAME.—*Grant to, Construed Against the Grantee.*—A grant made by the Commonwealth, or by a municipality under authority from the Commonwealth, is to be taken most strongly against the grantee, and nothing is to be taken by implication against the public, except what necessarily flows from the nature of the terms of the grant.

SAME.—*Special Charters.—Conflict of Interests.*—If the sovereign grant a special charter to a corporation to conduct a particular business, without granting any exclusive privileges over that business, the same sovereign may, in like manner, grant special charters to other corporations to carry on the same business, and if there is a conflict of profits between them the first has no remedy.

STREET RAILWAY.—*City may Prescribe Motive Power.— Violation of Grant of Power.—Rival Companies.*—A city, having control over its streets, may prescribe the motive power to be used in moving cars, and when it prescribes one kind of power the company can not use another; and in a contest between two rival street railway companies for the possession of a street, one of which is using a motive power not authorized by its charter, the other company may attack its right to such street by showing such violation of its franchise.

SAME.—*Exclusive Possession of Street.—Power of City to Grant.—First to Occupy Protected.*—A city can not give an exclusive right to a street railway company to occupy all its streets, to the exclusion of all other companies, and so prevent it afterwards giving similar grants to other companies.  But if it make such a grant and then make a similar grant to another company, that company which first occupies a street, or which first enters upon the construction of a particular line of street railroads, and has expended its money in the prosecution of the work, is entitled to the possession of such street, or to the streets over which such particular line passes, although the effect is that such company thus acquires the exclusive possession of such street or streets for the purposes of a street railroad.

From the Marion Superior Court.

J. B. Black, U. J. Hammond, E. S. Rogers, S. M. Shepard and C. Martindale, for appellant.

H. C. Allen, F. Winter and J. B. Elam, for appellee.

COFFEY, J.—This was an action by the appellee against the appellant, brought for the purpose of enjoining the appellant from constructing a street railroad on certain streets in the city of Indianapolis, and to enjoin it from interfering

with the appellee in its construction of a street railroad on said streets.

It is alleged in the complaint that the Citizens Street Railway Company is a corporation organized under the laws of this State for the purpose of building, maintaining and operating street railways, propelled by animal power, in the streets of the city of Indianapolis; that after the organization of said corporation the common council of said city, on the 18th day of January, 1864, passed an ordinance, by section two (2) of which, and by the terms of section three (3) of a subsequent ordinance passed on the 18th day of September, 1865, said corporation was granted power and authority to construct and lay a single or double track for such railway lines upon and along the course of all the streets of the city of Indianapolis, including Meridian, Circle, Market, Georgia and Alabama streets, and Home, Central and Lincoln avenues; that by the terms of said ordinance said tracks were to be laid in the center of said streets where practicable, except where a double track was contemplated, in which case the tracks were to be laid so as to make the center of said tracks the center of the street; that the grant of said right was to extend for the full term of thirty-seven years; that said city was not to grant to any person or corporation any privilege which would impair or destroy the rights and privileges of said corporation; that said corporation promptly accepted said ordinance and the other ordinances amendatory thereof, and at once laid and commenced operating a system of street railways in the city of Indianapolis, and complied with the terms of said ordinance, and has never at any time given to the authorities of said city any cause of forfeiture, and has been continually extending said system at an expense of many hundreds of thousands of dollars, and has never abandoned any of its rights; that the appellee is a corporation organized for the purpose of constructing, maintaining and operating street railways in the city of Indianapolis, propelled by animal power, and that in April, 1888, it purchased

from said Citizens Street Railway Company all its property of every nature and description, including its cars, tracks, rights, franchises, real estate, houses, mules, harness, etc., with a view to succeeding to the rights of said company in the continuation, maintenance and operation of its system of street railways in said city ; that in April, 1888, said city, by a duly adopted ordinance, granted to the appellee all the rights, franchises and privileges of every nature and description belonging to said Citizens Street Railway Company in the streets of said city, and thereupon appellant took possession of all such property, rights, franchises, etc., and has ever since been operating the said road under and in accordance with the authority conferred on it by its charter from the State of Indiana, and by its contract with said Citizens Street Railway Company, and by the said ordinance granting and confirming to it as the successor of said Citizens Street Railway Company all the rights of said last named company in the premises ; that the appellant is a corporation organized under the laws of this State for the purpose of constructing, operating and maintaining lines of street cars in the city of Indianapolis, and is claiming the right to construct, operate and maintain such lines of cars in said city upon the streets hereinbefore named ; that appellee has begun the construction of a line of street railway, commencing and communicating with a track, or an existing and completed line, known as the Illinois street line, at the junction of Illinois and Georgia streets, extending thence east on Georgia street to Meridian, thence north on Meridian to Washington street, and connecting on Washington street with the Washington street line ; and, also, thence north on Meridian to Circle, thence east on Circle to Market, and thence east on the Market street line ; and, also, diverging at Maryland street from said Meridian street line, and extending thence east on Maryland street to Pennsylvania street, and thence north on Pennsylvania street to Washington street, and connecting with said Washington street line ;

that it has, also, commenced another line, commencing at the intersection of Pennsylvania and Market streets, extending thence east on Market street to Alabama, thence north on Alabama street to Home avenue, thence east on Home avenue to Central avenue, and thence north on Central avenue to the State fair grounds.

That on said last named line it has done a large part of the work for the construction of the same with the greatest diligence; that on Tuesday the 24th day of July, 1888, it commenced work on said Georgia and Meridian street line, and is diligently prosecuting the same; that by the contract as set forth in said ordinances it is required to lay its said tracks in the center of said streets, and in case of double tracks the same must be laid at such distance from the center of said streets as will make the central point between the two tracks the center of the street; and that under its said contract and ordinances it has no right to lay said tracks at any other points in said streets; that the appellant claiming to have authority or license from said city has entered upon some of the same streets, to wit, Meridian and Market streets, and is threatening to enter upon others of said streets, and is building, and is threatening to build, a double track street railroad in the center of said streets, occupying precisely the same ground that the appellee is required by its ordinance to occupy, and is thereby seeking to, and will if it is permitted so to lay its tracks and maintain the same, exclude the appellee from the use of said streets; that in 1887 said city, by an ordinance duly passed, granted or attempted to grant to appellant the right to build and operate a line of street cars on Meridian, Circle, Market and Alabama streets, and on Home and Central avenues, the same to be operated as cable cars, that is, cars propelled by a cable revolving under ground and moved by a stationary steam engine at the termini of said lines; that long before it attempted to lay any track on said streets or any of them it disclaimed any purpose to accept said ordinance or license, and refused

to accept the same; that on the — day of June, 1888, it did enter upon Meridian street, between Circle and Maryland, streets, and proceeded to construct along the center of said street upon the very ground the appellee is entitled to occupy, a double track line to be used and propelled by animal power, or possibly by electrical motors, and at the time it thus tore up said street and constructed its track thereon it had no license or authority whatever in the premises to build any line whatever except said cable line, which it disclaimed any purpose of building; that on the — day of ———, 1888, said city passed an ordinance authorizing the appellant to build a line of street railroad on said streets to be operated by electric motors, the wires for said motors to be under-ground; that said ordinance was general in its terms, simply permitting said lines on said streets and not specifying the parts of said streets to be occupied by said lines; that after the appellee had commenced, as it had the right to do, to build its said tracks on Georgia and Meridian streets and on the other streets named, the appellant commenced to tear up said streets, and has commenced laying track on Market and Meridian streets, and is threatening to lay its said track on the other streets, herein above named, along the center of the same, thereby excluding the appellee from said streets.

The appellant filed an answer in two paragraphs, and also a counter-claim, and on a subsequent day filed a third paragraph of answer, but as no question is made on these pleadings they need not be set out.

The appellee also filed a second paragraph of complaint, but we deem it unnecessary to refer now to the allegations contained therein, as all the questions arising on this paragraph arise upon the special finding of facts hereinafter referred to in this opinion.

Upon issues formed the cause was tried at a special term of the superior court, resulting in the granting of a perpetual injunction against the appellant, from which it ap-

pealed to the general term and assigned error. The judgment of the special term was affirmed, from which the appellant appeals to this court.

The court, at special term, made a special finding of the facts in the cause and stated its conclusions of law thereon.

In this special finding is set out the several ordinances of the city of Indianapolis under which the respective parties to this suit claim the right to construct and operate street railroads on the streets of said city.

It appears by the special finding of facts in this cause, among other things, that on the 18th day of January, 1864, the common council of the city of Indianapolis passed an ordinance by which it granted to the Citizens Street Railway Company of Indianapolis, and its successors, the right to lay a single or double track for passenger railway lines, with all necessary and convenient tracks for turn-outs, side-tracks, and switches, in, upon, and along the course of the streets and alleys of the city of Indianapolis. The ordinance required the company to use animals only as a motive power. The track is required to be laid in the center of the street, in all cases where it is practicable to so lay it, except where a double track is contemplated, in which case the track may be laid at such distance from the center of the street as will make the center point between the two tracks the center of the street; no track is to be laid within twelve feet of the sidewalk upon any street in any case where it is practicable to avoid it. The rights and privileges granted by the ordinance are to extend over a period of thirty years from its passage, and the city thereby binds itself during said period not to grant to, or confer upon any other person or corporation any privileges which will impair or destroy the rights and privileges granted to the Citizens Street Railway Company. It is provided that if, at any time during said period of thirty years, the common council of the city of Indianapolis should be of the opinion that a line of street railroad should be constructed upon any street in said city, over

which no line exists, it may so declare by resolution, and if said company shall fail for a period of thirty days after service of notice, by the delivery of a copy of such resolution to it to certify to the common council of said city a copy of a resolution of its directors ordering the construction of such line, with the affidavit of the president attached, that it is the design, in good faith, of the said company to proceed immediately with the construction of said line of railway, the common council may, by resolution, declare all privileges and right of way over and in said line of street railway forfeited; and may grant the same to some other person or company.

By an ordinance passed by said council on the 18th day of September, 1865, it is declared to be the true intent and meaning of the ordinance of January 18, 1864, to grant to the Citizens Street Railway company the right to construct and operate street railways on any and all streets in the city of Indianapolis, whether named in said ordinance or not; and by the latter ordinance such permission is granted as to all the streets then in said city as well as to all streets that might thereafter be added by the extension of the corporate limits of the city.

Immediately after the passage of these ordinances the Citizens Street Railway Company commenced the construction and operation of a system of street railways in the city of Indianapolis under said ordinances, and continued to construct and operate such system until the 24th day of April, 1888, at which time it had thirty-eight miles of street railroad tracks. On the 24th day of April, 1888, it sold and transferred all its property, including said track, cars, mules, harness, etc., to the appellee, which transfer was duly approved by the common council of the city of Indianapolis. At the time of the approval of said transfer the common council passed an ordinance granting to the appellee all the right and privileges possessed by the Citizens Street Railway Company. Immediately after obtaining possession of the property, the appellee began to extend the system of

street railroads already existing, and between the time of its purchase and the 1st day of September, 1889, built nearly fifteen miles of additional track.

On the 22d day of June, 1887, the common council of the city of Indianapolis, by an ordinance duly passed, granted to the appellant permission and authority to lay, construct, operate and maintain a single or double-track street railway, with all the necessary and convenient tracks for turn-outs, side-tracks, switches and terminals in, upon and along all streets and alleys of said city then existing or which might thereafter be laid out.

The ordinance required the appellant to construct, by the 1st day of November, 1888, what was known as cable lines, operated by under-ground cable in connection with stationary engines, on the following portions of said streets: One line commencing at the Union Passenger Station at Jackson Place; thence north on the new fifty foot street leading from Jackson Place to Georgia street; thence east upon Georgia street to Meridian street; thence north on Meridian street to Circle street; thence west on Circle street to Market street; thence west on Market street to Tennessee street; thence north on Tennessee street to New York street; thence west on New York street to Mississippi street; thence north on Mississippi street to Seventh street; thence east on Seventh street to Tennessee street; thence north on Tennessee street to Twelfth street, and thence east on Twelfth street to the State fair grounds.

One line commencing at the intersection of Meridian street and the south boundary of Circle street, thence east on Circle street to Market street, thence east on Market street to Alabama street, thence north on Alabama street to Home avenue, thence east on Home avenue to Central avenue, thence north on Central avenue to Clyde street, thence east on Clyde street to College avenue ; and one line commencing at the intersection of Georgia street and Meridian street, thence east on Georgia street to Pennsylvania street, thence south

on Pennsylvania street to Madison avenue, and southwesterly on Madison avenue to Minnesota street.

On the 23d day of June, 1887, the appellant filed notice of its acceptance of the terms of this ordinance, but nothing was done looking to the construction of railway tracks until about the 1st of January, 1888. At that time John W. Dudley, a civil engineer, made some surveys for the New York Cable Railway Construction Company, which work he prosecuted at intervals between the 1st of January and the 13th day of March, 1888. During this time he surveyed a line called the Michigan street line, extending from Fall creek bridge southwesterly to West street, and thence southeasterly to Michigan street, and eastward on Michigan street to the United States arsenal grounds, and thence northerly on Keystone avenue to Clifford avenue, thence easterly on Clifford avenue to Rural street. He made a profile of this line. He was employed to do this work by W. W. Dudley, the general manager of the New York Cable Railway Construction Company, who was at the time president of the Indianapolis Cable Street Railroad Company. Between the 1st and 6th of May, 1888, said John W. Dudley resumed his surveys for the New York Cable Railway Construction Company, and within a few days thereafter the angle formed by the central line of Georgia street and the central line of Meridian street was measured and wooden stakes driven at the intersection of these two lines, to form a basis upon which to order curve construction at said intersection. A similar stake was driven at the intersection of the central line of Meridian street and the street car tracks of the Citizens Street Railroad Company on Washington street, and the angle was measured there in like manner. The same measurements were made at the intersection of the central line of Circle street and Meridian street, and a line was measured around the southeast quarter of Circle street. There was, also, a similar stake driven at the intersection of. the center line of Market street and the center line of the

Citizens Street Railroad Company's tracks on Pennsylvania street, and the angle there measured. At the intersection of the center line of Market and Alabama, and the center line of the Citizens Street Railroad Company's tracks on Massachusetts avenue, a similar stake was driven and a like measurement of angle made. At the intersection of the center line of Morris street and Alabama street a similar stake was driven; and, also, both at the intersection of the center line of Alabama street, south of Morrison street and north of Morrison street, there being an off-set or jog on Alabama street at Morrison of about fifteen feet. The angles were also measured on Morrison street.

Like measurements and stakes were driven at the intersection of Sixth and Alabama streets, Sixth street and Central avenue, Central avenue and Ninth street, and the central line of the Citizens Street Railroad Company's tracks upon College avenue on Ninth street; and at a point about two hundred feet east of College avenue on Ninth street, a similar peg was driven in the center of Ninth street. Plats were made showing these measurements. All said surveying, measuring, platting, were begun between the 1st and 6th of May, 1888, and continued for and done within three or four days, by John W. Dudley and his assistants. During the last eight days of May, 1888, John W. Dudley resumed work for the New York Cable Railway Construction Company, and made a survey, beginning on Market street, on the east side of Circle street, extending to the intersection of the center line of Alabama street and Market street, and thence north on Alabama street nearly to New York street. This survey consisted of a measurement of the distance along the center line of the street, and pegs were driven at intervals of one hundred feet. These pegs were driven to furnish reference marks for a double line of track of street railroad extending along the line of the route measured. In the latter part of May, 1888, the New York Cable Railway Construction Company became insolvent, and, after the first of

June that year, no more work was done for it in Indianapolis. The work done by or for said company was done for and on behalf of the appellant. The 1st of June, 1888, a contract was made between W. W. Dudley and associates, subscribers for the majority of the stock of the Indianapolis Cable Street Railroad Company, and Mr. Tom L. Johnson and his associates, by which the latter obtained an assignment of said stock subscriptions, none of the stock of said company having then been issued. On the 1st of June, 1888, W. W. Dudley arranged with Tom L. Johnson to order for the appellant a mile of single track material, and on short notice to procure materials of three miles of double track, in all seven miles of single track; in pursuance of this order, a mile of track material was sent immediately, and at the same time they made arrangements for tools and employed agents and workmen for laying track on Meridian street and other streets. On the 2d or 3d day of June, 1888, said John W. Dudley began work for the Indianapolis Cable Street Railroad Company upon the streets of Indianapolis. He drove stakes at intervals of fifty feet upon the center line of Meridian street, between the south line of Circle street and the north line of Pearl street, by direction of W. W. Dudley, the president of the appellant's company. These stakes were driven for the purpose of furnishing reference points by which to align tracks of a street railroad. On the 4th day of June, 1888, the appellant began laying street railroad track, beginning at the south line of Circle street, and extending southward on Meridian. The track laid at this time on Meridian street, south of Circle street, was a double track street railway, two tracks being laid at equal distances from the center of the the street, with their inner rails about four feet and four inches apart, each track occupying, with the ties supporting it, a space of eight feet. It was not a cable street railroad, and was not built for the purpose of being operated as such, the idea of building a cable road having been abandoned about the first of June of that year.

The work of laying his double track road on Meridian street, extending south from the Circle, was continued until the north line of Washington street was reached, when Washington street itself was omitted and work resumed on the south side of Washington street, extending said tracks southward on Meridian until they reached Pearl street, making a distance of about two hundred and twenty-five feet between Circle street and Washington street, and about one hundred and sixty-two feet between Washington street and Pearl street. This work was completed between Washington street and the Circle, and was in progress south of Washington street, when work was suspended by the request of the city attorney of Indianapolis, which request was based upon the ground that the track being laid on Meridian street, south of Circle street, was not a cable street railroad, and not authorized by the ordinance giving the appellant company authority to lay street railroad tracks where those were laid. These tracks laid on Meridian street, between Circle and Pearl streets, could be used to run cars drawn by animals or propelled by the overhead wire and pole system of electricity, or by cars operated by an electrical storage battery, and could not be operated by cables or under-ground wires, as there was no excavation in the street below said tracks to constitute a chamber in which any under-ground wires could be operated. The appellant, at the time it constructed these tracks, did not construct them to be operated by under-ground cables or wires.

Soon after the transfer to the appellee of the rights of its predecessor hereinbefore mentioned, the general manager of that company gave orders to construct a number of additional street car lines in the city of Indianapolis, and among other lines was a line extending from the Union Station to the State fair grounds.

On the 6th day of June, 1888, the appellee began work on Market at the east line of Pennsylvania street, and continued to excavate and lay track toward the east on Market

street, until the square between Pennsylvania and Delaware streets were completed; and the square between Delaware and Alabama streets was well advanced towards completion when work was stopped by the street commissioner of the city of Indianapolis. On the 10th of June, 1888, an injunction suit was brought by the appellee to prevent further interference with the work by the city authorities, and upon this injunction being granted, work was resumed on Market street between Delaware and Alabama, and continued upon Alabama street between Market and New York streets, said work on Alabama street being well advanced towards completion on the 24th day of July, 1888.

The appellant caused its said engineer and his assistants, on the 24th day of July, 1888, between the hours of eight and twelve in the morning, to survey Georgia street between Illinois and Meridian streets, and to drive stakes similar to those hereinbefore mentioned on the center line of Georgia street, from a point therein, east of Illinois street and west of Meridian street, and at about one-third of the distance eastward between Illinois and Meridian streets, said point being at the west side of a street running north from the Union Depot and Jackson Place to Georgia street, and named McCrea street, thence eastward to the intersection of the center lines of Georgia and Meridian streets, said stakes being driven to the surface of the street at intervals of fifty feet along said course, for the purpose of furnishing a reference mark for the construction by the appellee of a double track street railroad upon Georgia and Meridian streets, to connect with the line of street railroad which the appellant had built, as before stated, between Circle and Pearl streets, upon Meridian street.

At the time the appellant caused said survey and staking, commencing between the 1st and 6th days of May, 1888, and continuing for three or four days, there was no street railway track of any company upon and along Meridian street between Louisiana street and Circle street, or on and along

Circle, or on and along Market street, between Circle street and Alabama street, or on and along Alabama street between Market street and Sixth street, or on and along Sixth street between Alabama street and Central avenue, or on and along Central avenue between Sixth street and Ninth street, or on and along Ninth street.

At the time the surveying and staking, within the last eight days of May, 1888, was done, there was no street railroad track of any company on and along Market street between Circle street and Alabama street, or on and along Alabama street, between Market street and Seventh street.

On the 6th day of June, 1888, at 1 o'clock P. M., the appellee first began work upon a line of street railway on Market street, between Pennsylvania and Alabama streets, by placing a force of men there and commencing the digging up of the street to put in a double-track street railroad, and laid there some ties and track between that time and the third day thereafter, when said work stopped for the time being, no work having been done at that time on any other part of the line of which the line put in was to constitute a part.

On the 24th day of July, 1888, the appellant, besides causing the survey and staking on Georgia street, made arrangements for assembling its workmen to resume construction the next morning on Georgia street, between Illinois and Meridian streets, and on Meridian street between Louisiana street and Circle street, and for such purpose caused its tool boxes to be deposited at the northeast corner of Meridian and Georgia streets, between three and four o'clock in the afternoon. About the same hour a force of the appellee's workmen commenced work on Georgia street, at or near its intersection with Illinois street, and began digging up said Georgia street eastward from Illinois street, and constructing upon said Georgia street at that place toward Meridian street a double-track street railway. About 7 o'clock on the evening of the same day the appellant placed its force of

workmen upon Meridian street, at the crossing thereof with Georgia street, and commenced digging up said Meridian street, and constructing on and along the same a double-track street railway, beginning said digging and construction at the north side of said crossing, and extending the same southward across said crossing, and on Meridian street toward Louisiana street, there being then no street railroad track constructed or in course of construction upon Meridian street, except said portion constructed by the appellant heretofore mentioned. On the same. evening, and immediately after the appellant had commenced said digging and construction, the appellee, dividing its force of workmen so working upon Georgia street, and transferring a portion of its said force of workmen from Georgia street to Meridian street north of Georgia street, caused its said workmen to dig up Meridian street between Georgia and Maryland streets, and to construct thereon a double-track street railway; and the same night the appellee caused its said force of workmen to place its double-track iron curve for said railway at said crossing of Georgia and Meridian streets, partly upon cross-ties placed by the appellant in excavations made by it, but did not fasten them, and for the purpose of so placing said curve drove and pushed from said place the workmen of the appellant, and afterward appellee removed the ties of appellant, and replaced them with its own.

Thereupon, on said night of the 24th of July, 1888, and on succeeding days, the appellant constructed and finished its double-track railway upon Meridian street between Georgia and Louisiana streets.

On the 25th day of July, 1888, the appellee caused its workmen to continue the work of constructing a double-track street railway on and along Meridian street between Georgia and Maryland streets.

On the 25th day of July, 1888, the appellant, besides continuing its work of construction on Meridian street between Louisiana and Georgia streets, also proceeded to, and did,

dig up and prepare Meridian street from Pearl street to and beyond Maryland street, and place and construct there a double-track street railway. Also, on the same day, the appellant dug up and prepared Market street from Circle street eastward to Pennsylvania street, and placed cross-ties and rails, and partly constructed a double-track street railway, on and along said portion of Market street, there being then no other railroad track upon said portion of Market street.

On the evening of the 25th day of July, 1888, the appellant's workmen being at work on Circle street between the southern intersection with Meridian street and its eastern intersection with Market street, and having been notified of the issuance of a restraining order, which on that date was granted in this cause against it, restraining it from work on said line, and because thereof, ceased work upon its said line, the same being the first line designated in section 2 of General Ordinance No. 19 of 1887, as amended by section 1 of General Ordinance No. 34 of 1888.

After the issuing of the said restraining order, and after the granting of a temporary injunction, which was issued against the appellant on the 28th day of July, 1888, enjoining it from working upon said line, and while said restraining order and said temporary injunction were pending and in force, the appellee continued its work of construction, and constructed and finished, and has been and is using and operating with animal power, a continuous double-track street railway on and along the following streets : Georgia street from Illinois street to Meridian street, Meridian street from Georgia street to Circle street, Circle street from Meridian street south of Circle street to Market street east of Circle street, Market street from Circle street eastward to Alabama street, Alabama street from Market street to Home avenue, Home avenue from Alabama street to Central avenue, Central avenue from Home avenue to Tenth street.

In the construction of its said line mentioned in the nine-

teenth paragraph of the special finding, while said restraining order and said temporary injunction were in force against the defendant, the appellee took up and wholly removed from their places in the streets all the tracks so constructed by the appellant on Meridian street and Market street, placing the material thereof in the street gutters, and placing and constructing its tracks of said line in the same places from which it had so removed the appellee's said tracks.

In constructing said line of street railway track from Illinois street to Tenth street, upon the route before described, and in extending its line on Meridian street south of Georgia street, appellee removed from its position twenty-six hundred feet estimated as single track street railroad, which was worth $1.75 a foot when in place in the street, and 75 cents a foot when removed and lying upon the side of the street as hereinbefore stated, except four hundred feet on Market street, between Circle and Pennsylvania streets, which had only been partially completed, and was worth $1.50 as it lay in the street before removed to the sides thereof.

The city council of the city of Indianapolis, by an ordinance passed on the 2d day of July, 1888 granted to the appellant further time, extending to the 1st day of January, 1889, within which to complete certain designated lines of cable street railway, with the right to construct either a cable or electric railway, which ordinance was accepted by the appellant on the 23d day of July, 1888.

As a part of said system of street railways of which the appellee took possession and proceeded to operate on the 23d day of April, 1888, there was and is a line of street railway extending on Washington street along its entire course through said city; also a double-track street railway extending from Louisiana street northward on Illinois street to Seventh street, connecting at Washington street with said line thereon; also a double-track street railway connecting with said Washington street line at the intersection of

Washington and Pennsylvania streets, and running thence northward on Pennsylvania street to Seventh street, and thence east on Seventh street to Alabama street, thence north on Alabama street to Ninth street; also a street railway connecting the said Pennsylvania street line at the intersection of Pennsylvania and Ohio streets, and running thence northeasterly on Massachusetts avenue to New Jersey street, thence north on New Jersey street to Fort Wayne avenue, thence northeasterly on Fort Wayne avenue to Central avenue, thence north on Central avenue to Christian avenue, thence east on Christian avenue to College avenue, thence north on College avenue to Ninth street; also a line of street railway connecting the said Washington street line at the intersection of Washington and East streets, and running thence north on East street to Ohio street, thence east on Ohio street to Noble street, thence north on Noble street to Massachusetts avenue, thence northeast on Massachusetts avenue to Peru street, thence north on Peru street to Home avenue.

The appellant has never disclaimed, abandoned, or consented or agreed to the surrender or repeal of its rights or privileges under and through its said ordinances numbered 19 and 34, hereinbefore mentioned.

The double-track street railways commenced and constructed by the appellant on Meridian and Market streets, as hereinbefore stated, were of such construction as to be capable of and suitable for operation as an electrical street railway using the storage battery system for propelling the cars thereon, and were suitable for or capable of being operated by means of poles or overhead wires. Said storage battery system is one method of propelling cars run on street railways, but as yet is mostly experimental, not in general use, and expensive when used to propel cars over street railways. The purpose of the appellant to use such storage system as a motive power in propelling its cars over the line of its railways in the city was not declared in writ-

ing, or in any way made known to the city or its officers. It was, however, orally so declared about the 1st of June, 1888, by some of the officers of the defendant.

Upon these and other facts set out in the special finding, not necessary to be here repeated, the court stated as a conclusion of law that the appellee was entitled to an injunction against the appellant enjoining it from constructing a street railroad in the center of the streets named in the complaint and entered a decree accordingly.

It is not denied that the common council of a city, in this State, has the exclusive control and management of the streets and alleys within the corporate limits of the city. Indeed, it is conceded on all sides that the common council of the city of Indianapolis possessed the power to grant to the appellee, as well as to the appellant, the privilege of building and operating street railroads upon the streets of the city.

It is contended by the appellant, however, that the appellee is claiming that the city of Indianapolis, by its common council, granted to it the exclusive right to occupy, for street railroad purposes, the center of all the streets in the city, and it is argued that such grant, if made, amounts to a monopoly, and that it is, for that reason, void.

As a general rule neither the State nor a municipal government can grant or create a monopoly. *Citizens' Gas, etc., Co.* v. *Town of Elwood,* 114 Ind. 332. In that case it was said by this court: "The spirit and policy of the law forbid municipal corporations from creating monopolies, by favoring one corporation to the exclusion of others." Our Constitution provides that "The General Assembly shall not grant to any citizen, or class of citizens, privileges or immunities which, upon the same terms, shall not equally belong to all citizens." But it must not be understood by this rule that all monopolies are unlawful. Many things which are lawful are from their nature and of necessity monopolies. Such are patent-rights, copyrights, the right to keep

a ferry, and many other things which might be mentioned. As a street railroad company has no legal right to lay its track upon the streets of a city without the permission of the common council, if the city should grant such right to one company and refuse to grant it to another, the company to which the right was granted would have a monopoly, until such time as the common council should grant a similar right to some other person or company. So if the common council should grant to a street railroad company the right to lay its track on certain streets which were too narrow to admit of being occupied by other street railroad tracks, such company would have a monopoly of such streets. It is plain, therefore, that while monopolies, as a general rule, are unlawful, there are many exceptions to the rule. The rule applies only to such things as are of common right, and is never to be applied to such things as are in their nature a monopoly.

Judge Elliott, in his valuable work on Roads and Streets, in discussing this question, at page 566, says : " To deny the power of the Legislature to make a grant that is of necessity of a monopolistic character, would lead to the unwarranted conclusion that in no case can the Legislature grant the right to lay and operate a street railway in a road or street, for, if the power to make such a grant be conceded, it necessarily and unavoidably results that the occupancy of the part of the road or street is exclusive, as two railways can not occupy the same space."

It is held in many respectable authorities that an exclusive right, in such cases, may be granted for a reasonable and fixed period. *New Orleans, etc., Co.* v. *Louisiana, etc., Co.,* 115 U. S. 650; *New Orleans, etc., Co.* v. *Rivers,* 115 U. S. 674; *Des Moines, etc., Co.* v. *Des Moines, etc., Co.,* 73 Iowa, 513; *St. Tammany Water Works* v. *New Orleans Works,* 120 U. S. 64.

This brings us to a consideration of the ordinance passed by the common council of the city of Indianapolis granting

to the Citizens Street Railway Company the right to con-
struct and operate street railroads upon the streets of the
city of Indianapolis, and to whose rights the appellee claims
to have succeeded.    This ordinance, together with the ordi-
nance subsequently passed, declaratory of the intention of
the parties at the time of its passage, grants to the Citizens
Street Railway Company the right to lay its track, either
single or double, on all the streets of the city of Indianapo-
lis, confining it, however, to the center of the street where
practical.    This right is not declared in the ordinance to be
exclusive.

Grants of franchises by public corporations to individuals
or private corporations are to be strictly construed, and no
exclusive privilege passes, unless it be plainly conferred by
express words or necessary implication.    *Citizens' Street R.
W. Co.* v. *Jones*, 34 Fed. Rep. 579.

A grant made by the commonwealth, or by a municipal
corporation, under authority from the commonwealth, is to
be taken most strongly against the grantee, and nothing is
to be taken by implication against the public, except what
necessarily flows from the nature of the terms of the grant.
*Mayor, etc.,* v. *Ohio, etc., R. R. Co.,* 26 Pa. St. 355 ; *Birm-
ingham, etc., R. W. Co.* v. *Birmingham, etc., R. W. Co.,* 79
Ala. 465.

The ordinance granting to the Citizens Street Railway
Company the right to construct street railways on the streets
of the city of Indianapolis does not grant to it the exclu-
sive right to construct street railways thereon.    Indeed, it
is not claimed by the appellee, as we understand the briefs
on file, that it possesses the exclusive right to construct
street railroads on the streets of the city, but it is conceded
that the common council may grant to other persons or cor-
porations the same right.    Where the sovereign has granted
a special charter to a corporation to conduct a particular
business, without granting any exclusive privileges over that
business, the same sovereign may, in like manner, grant

special charters to other corporations to carry on the same business, and where there is a conflict of profits between them the first has no remedy. *Crawfordsville, etc.,Co.* v. *Smith*, 89 Ind. 290; *Charles River Bridge* v. *Warren Bridge Co.*, 11 Peters, 420.

Acting upon this well-known principle the common council of the city of Indianapolis granted to the appellant the right, also, to construct, maintain, and operate street railroads upon the streets of the city of Indianapolis.

At this point the question arises as to what were the respective rights of the appellant and the appellee, in so far as they had the right to occupy the streets of the city, as between themselves.

As to unoccupied streets, our opinion is that they stood upon an equality; and that the controversy resolved itself into a question of first occupancy.

Judge ELLIOTT, in discussing this question, in his work on Roads and Streets, page 570, says: "If the company which secures the first grant actually occupies the streets it is authorized to use, then there is much reason for affirming that its right to the part of the street actually occupied and used is paramount and exclusive. By actually taking possession of the street and using it for the accommodation of the public, the company first in point of time does such acts as vest its right. But to have this effect the company, as it seems to us, must take possession in good faith and for the purpose of constructing and operating such a railway as the grant contemplates. * * * While it is, as we believe, true that some act must be done vesting the inchoate right conferred by a general grant, still, we do not regard it as essential that manual possession should be taken of all of the streets or roads embraced in the general grant or license. If the company having the prior right enters upon the work of constructing a system, and with reasonable diligence and in good faith does actually construct a considerable part of the system, it ought not to lose its rights, unless it has failed

to comply with a proper demand to complete the system or has unreasonably delayed its completion.    *    *    *

"Conflicting claims asserted by rival companies claiming under general grants, must often be settled by applying the rule that the first to rightfully occupy the street has the better right."

We have thus copied copiously from the work above referred to, because we think it states the law accurately and concisely.    See, also, *Waterbury, etc., Co.* v. *Dry Dock, etc., R. R. Co.,* 54 Barb. 388; *Titusville, etc., R. R. Co.* v. *Warren, etc., R. R. Co.,* 12 Phil. 642; *Morris, etc., R. R. Co.* v. *Blair,* 9 N. J. Eq. 635; *Denver, etc., R. W. Co.* v. *Canon City, etc., R. W. Co.,* 99 U. S. 463.

Where a company has entered upon the construction of a particular line of street railroads and has expended its money in the prosecution of the work, it would be manifestly unjust to permit some other person or company, after the commencement of the work, to jump in and appropriate any portion of the streets involved in such line while the former was diligently prosecuting the work, and thus destroy the projected line to the ruin of the company engaged in its construction.

If this could be done no person or company would undertake the construction of a system of street railroads; but to hold the right to such line money should be expended in its construction, and the work, with a view of its completion, should be diligently prosecuted without intermission unless stopped by circumstances over which the projector has no control.

In this case, as we understand the special finding, the appellee, in the early part of June, 1888, entered upon the construction of a line of street railroads in the city of Indianapolis, which appropriated a portion of the streets described in the complaint.    Such line was determined upon and ordered by the general manager of the appellee soon af-

ter the transfer made to it by the Citizens Street Railway Company.

It does not appear that the appellant did anything under its charter prior to the 24th day of July, 1888.

Disregarding its charter, which authorized the construction of a cable road, it proceeded to construct one of an entirely different character. Indeed, it wholly abandoned the idea of constructing a cable road, and when engaged in constructing one of a different character, in violation of its charter, it was stopped by the city attorney, for the reason that it was acting wholly without authority. The appellant, by taking possession of the streets of Indianapolis with a view of constructing a street railroad other than a cable road, acquired no rights in such streets either as against the appellees or the city. It was a mere trespasser. A municipal power, having control over the streets, may prescribe the motive power to be used in moving street cars, and when it prescribes one kind of power the company can not use another.

As the grant of a special charter or franchise to a corporation is construed strictly against the corporation, where the right to use one motive power is prescribed the company can not successfully maintain its right to use another or different power. Elliott Roads and Streets, p. 560; *People, ex rel., v. Newton,* 48 Hun, 477; *People, ex rel., v. Newton,* 112 N. Y. 396; *Denver, etc., R. W. Co. v. Denver City R. W. Co.,* 2. Col. 673; *Citizens' St. R. W. Co. v. Jones, supra; Birmingham, etc., R. W. Co. v. Birmingham, etc., R. W. Co., supra; Mayor, etc., v. Ohio, etc., R. R. Co., supra; North Chicago City R. W. Co. v. Town of Lakeview,* 105 Ill. 207.

It is urged, however, that the appellee can not inquire as to the motive power by which appellant intended to move its cars, as that was a question entirely between the appellant and the city of Indianapolis. We are not inclined to adopt this view. If the appellee had no interest in the question other than that possessed by a citizen of the city of

The Indianapolis Cable Street R. R. Co. *v.* The Citizens Street R. R. Co.

Indianapolis, doubtless it could not raise the question now under consideration, but the appellant and the appellee had equal rights in the streets in controversy. Neither had the exclusive right to the streets or any portion thereof until occupied under its charter. The first to take possession, in good faith, under the charters granted to it, acquired the superior right. When the appellant claims, therefore, that it entered the streets of Indianapolis and took possession under the terms of its charter, in good faith, with a view of constructing the line of street railroad, which it had the right to construct under the terms of its charter, we think it competent for the appellee to allege and prove that it did not enter under the terms of its charter, and that instead of constructing a line of cable street railroad, it was acting in violation of its grant and was a mere trespasser. There can be no pretense that the appellant did any work conforming to the rights granted it by the city of Indianapolis prior to the 24th day of July, 1888, as it did not accept the right granted it to construct an electric railroad until the 23d day of that month. In the meantime the appellee had taken possession of the streets in controversy, and was diligently prosecuting the work of constructing a line of street railroad which included these streets. The rights acquired by the appellant on the 23d day of July could have no retroactive operation so as to affect the rights of the appellee vested by its possession.

It follows, from what we have said, that as the appellee commenced the construction of a line of street railroads under the terms of its charter, which included the streets in controversy, and was in good faith diligently prosecuting the work to completion prior to the time the appellant commenced work to construct a line of street railroads pursuant to the terms of its charter, the appellee has the superior right.

It is claimed, however, that the Citizens Street Railway Company could not sell and transfer to the appellee its franchises, and that appellee by its purchase acquired no rights.

We regard this as an immaterial question. The appellee is a duly organized corporation, for the purpose of owning and operating a street railroad in the city of Indianapolis. It is not denied that by its purchase it acquired all the property of the Citizens Street Railway Company, except its franchises. The city of Indianapolis, about the date of the transfer of the property, granted to the appellee all the rights, privileges, and franchises possessed by the Citizens Street Railway Company.

Assuming, without deciding, that the Citizens Street Railway Company could not sell and transfer its franchises, still the right of the appellee to own, construct, and operate its railroad upon the streets of the city of Indianapolis is complete by reason of the grant above named.

We have carefully examined all the questions presented by the record, and argued in the able briefs of counsel in this case, and find no error for which the judgment should be reversed.

Judgment affirmed.

Filed June 19, 1890.

ON PETITION FOR A REHEARING.

COFFEY, J.—An earnest petition, supported by an able brief, has been filed in this case, in which it is contended by the appellant that this court erred in holding that the line of street railway constructed by the appellee was one continuous line.

It is contended that the pleadings and finding of facts demonstrate that the appellee, at the time this suit was commenced, was engaged in the construction of two separate and distinct lines, and that the facts found by the court show that as to one line the appellant was the first to occupy the streets over which it passes.

Under this claim we have again carefully examined the pleadings and finding in the cause, and have reached the conclusion that the appellant's contention can not be sus-

tained. It is true that some isolated words and sentences in the original complaint seem to sustain the position assumed by the appellant, but the amended complaint filed by the appellee proceeds upon the theory that the work done by the appellee was done pursuant to a determination to construct one continuous line of railway extending from the intersection of Georgia and Illinois streets to the State fair grounds, over the streets named in the complaint. From the filing of this amended complaint the cause, so far as the appellee was concerned, seems to have proceeded throughout upon this theory.

With some hesitation we have reached the conclusion that the special finding sustains the theory of the appellee.

There seems to have been a race between the appellant and the appellee as to which should first acquire the actual possession of Georgia street. In the matter of actual construction the appellee was first to break ground, but before this occurred the appellant had surveyed the street and had driven stakes.

The survey by the appellant, and the work done by the appellee on this street, all occurred on the same day, and, for all practical purposes, we think the parties may be regarded as having taken the actual possession of this street at the same time. If the appellee, however, long prior to this time, had commenced the construction of a line of railway extending from the intersection of Georgia and Illinois streets to the State fair grounds, which included the portion of Georgia street now in controversy, and was diligently prosecuting the work of constructing such line at the time appellant took possession, the former had the better right, for the appellant could not appropriate any portion of a line then in process of construction.

Petition overruled.

Filed March 11, 1891.